789 F.2d 674
 54 USLW 2586, 14 Collier Bankr.Cas.2d 904,
Bankr. L. Rep. P 71,137
 In the Matter of 268 LIMITED, A Nevada Limited Partnership, Debtor.
JOSEPH F. SANSON INVESTMENT CO., a Limited Partnership and
Joseph F. Sanson, Individually, Plaintiffs-Appellants,
v.
268 LIMITED, A Nevada Limited Partnership, Defendant-Appellee.
 No. 84-2837.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 15, 1986.
Decided May 5, 1986.
As Amended July 29, 1986.
 
 Gerald M. Gordon, Wiener, Waldman, Gordon, Ltd., Las Vegas, Nev., for plaintiffs-appellants.
 Joshua Landish, Leonard Wilson, Las Vegas, Nev., for defendant-appellee.
 Appeal from the United States District Court for the District of Nevada.
 Before MERRILL, GOODWIN and ALARCON, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Appellee-debtor 268 Limited, a Nevada limited partnership organized to acquire and operate an apartment complex for investment purposes, purchased the Shenandoah Square Apartments from appellant Joseph F. Sanson Investment Company (Sanson). Sanson retained a security interest in the property evidenced by a note secured by a first deed of trust. The deed of trust provided that in the event of default and sale of the property by the trustee, five percent of the balance remaining due at the time of default would be paid to Sanson as attorney's fees.
 
 
 2
 After the filing of an involuntary petition under Chapter 11 against 268 Limited, default on the secured obligation, and sale of the real property securing the debt, Sanson applied to the bankruptcy court for $197,500 in attorney's fees provided in the deed of trust. The court awarded $20,000.
 
 
 3
 The property sold for about $1,000,000 in excess of the outstanding principal. Funds were thus available to pay the contractually set fee. The bankruptcy court, relying upon 11 U.S.C.A. Sec. 506(b) (West Supp.1986),[1] limited the fees to the amount it deemed reasonable under the circumstances. The district court affirmed the award. We must therefore decide whether the bankruptcy court was correct in making its own reasonableness assessment, or whether it should have enforced the contractual fee provision if it was valid under the governing state law.
 
 
 4
 We hold that Sec. 506(b) preempts the state law governing the availability of attorney's fees as part of a secured claim, and that the bankruptcy court correctly engaged in an independent reasonableness inquiry.
 
 
 5
 The Law Governing Reasonableness under Section 506(b).
 
 
 6
 Sanson argues that it is entitled to the agreed fee if that fee would be allowed under the state law governing the contract. 268 Limited argues that the bankruptcy court must assess the reasonableness of the claim without regard to state law.
 
 
 7
 Both the language and the structure of Sec. 506(b) require rejection of Sanson's argument. Sanson's theory is linguistically untenable because it implicitly equates reasonableness with enforceability. It argues that if the contractual fee provision would be enforceable under Nevada law, then the amount provided is reasonable per se under Sec. 506(b). Reasonableness and enforceability are not, however, coterminous. A concededly unreasonable fee provision might be enforceable under state law, whereas a reasonable one might be unenforceable for reasons unrelated to the size of the fee. Thus, we cannot agree that by requiring that contractual fee agreements be reasonable Congress meant only that they must be enforceable under the law governing the enforcement of the contract. To give Sec. 506(b)'s limitation meaning, we must read it to provide for an ex post reasonableness determination by the bankruptcy court.
 
 
 8
 Sanson's argument also ignores the structure of Sec. 506(b). The statute treats interest and "fees, costs or charges" claimed under Sec. 506(b) differently. The interest provision is not subject to the reasonableness limitation. When an oversecured creditor seeks interest on his or her claim, the bankruptcy courts apply the security agreement's interest rate. See, e.g., In re Rutherford, 28 B.R. 899, 902 (Bankr.N.D.Ill.1983); In re Elmwood Farm, Inc., 19 B.R. 338, 341 (Bankr.S.D.N.Y.1982); see also 3 Collier on Bankruptcy p 506.05, at 506-42 (15th ed. 1985). Sanson reads the fee provision as the interest provision is read, thus ignoring the express reasonableness limitation imposed on fees.
 
 
 9
 Section 506(b)'s legislative history also favors reading the statute as preempting the state law governing the reasonableness of fee provisions. The statute was enacted as part of the Bankruptcy Reform Act of 1978. References to it in the Act's legislative history are brief. Both the Senate and the House Reports state only that the provision "codifies current law" by entitling an oversecured creditor to fees. S.Rep. No. 95-989, 95th Cong. 2d Sess. 68, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5854; H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 356-57, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6312. The enforceability of attorney's fees agreements between oversecured creditors and debtors was governed by state law prior to the enactment of Sec. 506(b). Unsecured Creditor's Committee v. Walter E. Heller & Co. Southeast, Inc., 768 F.2d 580, 582 (4th Cir.1985). The reports thus support Sanson's view that state law governs reasonableness under Sec. 506(b).
 
 
 10
 However, a comparison of the various predecessor bills with Sec. 506(b) as enacted suggests that Congress ultimately rejected the reference to state law.
 
 
 11
 The first House predecessor bill did favor the application of state law. H.R. 6, 95th Cong., 1st Sess. (1977), introduced in January 1977, contained no reasonableness limitation at all. It afforded secured status to an oversecured creditor's interest on his claim, and "any fees, costs, or charges provided under the agreement under which such claim arose." A subsequent bill, H.R. 8200, 95th Cong., 1st Sess. (1977), as amended by the Committee on the Judiciary, read "[t]here shall be allowed to the holder of such claim, to the extent collectible under applicable law interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which the claim arose." The reasonableness provision suggests a move away from a state law standard. The "to the extent collectible under applicable law" language supports Sanson's argument, but may modify only the interest clause that immediately proceeds.
 
 
 12
 The Senate bill contained the reasonableness limitation, but omitted the "to the extent collectible under applicable law" language. S. 2266, 95th Cong., 1st Sess. (1977).
 
 
 13
 Congress enacted the Senate version of the bill. Although the differences were worked out without formal conference, Senator De Concini and Representative Edwards, the floor managers of the Act, made identical statements on the floors of their respective Houses regarding Sec. 506(b). They stated that the House version had been rejected in favor of the Senate version, and that fee agreements would be enforceable "notwithstanding contrary law." 124 Cong.Rec. 32,398, 33,997 (1978). Thus, despite the language of the House and Senate Reports, Congress declined to require that the bankruptcy courts consult the governing state law to determine the reasonableness of fees claimed under Sec. 506.
 
 
 14
 Section 506(b)'s legislative history is silent as to why Congress ultimately chose to displace pre-bankruptcy contractual arrangements. The legislative history of the Code's provisions imposing reasonableness limitations on other pre-bankruptcy obligations suggests, however, that they were intended to prevent overreaching or the collusive use of fee arrangements. In 11 U.S.C. Sec. 329 (1982 & Supp. II 1984), Congress limited the fees available to attorneys for work performed "in contemplation of" bankruptcy during the year before the filing of the petition to those deemed reasonable. The reports discussing Sec. 329 state that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." S.Rep. No. 95-989, supra, at 39, reprinted in 1978 U.S.Code Cong. & Ad.News at 5825; H.R.Rep. 95-595, supra, at 329, reprinted in 1978 U.S.Code Cong. & Ad.News at 6285. Similarly, 11 U.S.C.A. Sec. 502(b)(4) (West Supp.1986) disallows claims by "an insider or attorney of the debtor" to the extent that the claim exceeds the "reasonable value" of the services rendered. This provision, enacted as Sec. 502(b)(5) and renumbered without alteration by the 1984 amendments to the Bankruptcy Code, was designed to "prevent[ ] overreaching by the debtor's attorneys and [the] concealing of assets by debtors." S.Rep. No. 95-989, supra, at 63, reprinted in 1978 U.S.Code Cong. & Ad.News at 5849; H.R.Rep. 95-595, supra, at 353, reprinted in 1978 U.S.Code Cong. & Ad.News at 6309.
 
 
 15
 We note that when Congress intended state law standards to apply in bankruptcy it did so explicitly. 11 U.S.C. Sec. 502(b)(1) (Supp. II 1984) disallows claims against the estate that are "unenforceable against the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." Thus the validity of claims against the estate, with a few statutory exceptions, is determined by state law and private agreement. Congress' explicit reference to state law when it intended such law to apply cuts against Sanson's argument that the term "reasonable" in Sec. 506(b) requires only state law enforceability of the deed of trust's fee provision.
 
 
 16
 Sanson argues that Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), supports the application of a state law reasonableness standard. Butner stands for the proposition that in the absence of a federal interest requiring the displacement of state law property rights, those rights are not abrogated by the institution of federal bankruptcy proceedings. State law thus functions as a default rule for the determination of property interests in a bankruptcy proceeding. Butner does not, however, require that we read Sec. 506(b) to enforce contractual fee arrangements simply because the state law governing the contract would do so. Congress has chosen to treat contractual fees as part of the secured claim only to the extent that they are "reasonable." This express displacement of any contrary pre-bankruptcy state law entitlement of the oversecured creditor takes this case outside of Butner' § default provision.
 
 
 17
 The Reasonableness of the Bankruptcy Court's $20,000 Fee Award.
 
 
 18
 We review bankruptcy court factual determinations under the clearly erroneous standard. Global Western Development Corp. v. Northern Orange County Credit Service, Inc. (In re Global Western Development Corp.), 759 F.2d 724, 726 (9th Cir.1985).
 
 
 19
 In setting the $20,000 fee award, the bankruptcy court relied upon an affidavit by Sanson's counsel stating that his firm had billed Sanson $13,732.60 for services related to 268 Limited. Although the bankruptcy court's award is generous, particularly in light of the quality of the legal work performed both in the bankruptcy proceedings and before this court, its finding was not an abuse of discretion. In re Nucorp. Energy, Inc., 764 F.2d 655, 657 (9th Cir. 1985).
 
 
 20
 The Availability of Attorney's Fees Pursuant to 11 U.S.C.
 
 
 21
 Sec. 502.
 
 
 22
 Our rejection of Sanson's construction of Sec. 506(b) does not preclude it from seeking the contractual fees in excess of $20,000 as an unsecured claim. Section 506 establishes the requirements for a secured claim. Subsection (a) defines such claims. Subsection (b) states that under some circumstances "there shall be allowed to the holder of such claim" interest, fees, costs or charges. When read literally, subsection (b) arguably limits the fees available to the oversecured creditor. When read in conjunction with Sec. 506(a), however, it may be understood to define the portion of the fees which shall be afforded secured status. We adopt the latter reading.
 
 
 23
 Because other creditors may claim such expenses under 11 U.S.C. Sec. 502(b)(1) (Supp. II 1984), to bar Sanson from seeking the balance of its fees as an unsecured claim would make it worse off in bankruptcy than it would have been if its claim were unsecured. Further, our reading of Sec. 506(b) is consistent with the legislative history of 11 U.S.C. Sec. 501 (1982 & Supp. II 1984), which sets forth the means by which unsecured claims may be presented to the bankruptcy court. Both the Senate and the House Reports discussing Sec. 501 state that "a proof of claim will be a prerequisite to allowance for unsecured claims, including priority claims and the unsecured portion of a claim asserted by the holder of a lien." S.Rep. No. 95-989, supra, at 61, reprinted in 1978 U.S.Code Cong. & Ad.News at 5847; H.R.Rep. No. 95-595, supra, at 351, reprinted in 1978 U.S.Code Cong. & Ad.News at 6307. Because Sec. 501 contemplates that undersecured creditors may pursue the unsecured portion of their claims as unsecured creditors, we find that oversecured creditors with valid contractual fee claims may do the same.
 
 
 24
 The Failure of the Deed of Trust's Trustee to Sell the Property.
 
 
 25
 We reject 268 Limited's argument that the deed of trust's fee provision does not apply because the property was never sold pursuant to the terms of the deed of trust. The deed's covenant containing the fee provision states the priority of the claims payable in the event of a trustee's sale. It provides for the payment of the five percent attorney's fee out of the proceeds of the sale. Liability for the fee is not, however, contingent upon the trustee's sale of the property. The deed of trust provides that the fees became due upon default by 268 Limited. Therefore, the default itself and not the anticipated trustee's sale triggered 268 Limited's liability for Sanson's attorney's fees.
 
 Conclusion
 
 26
 We affirm the bankruptcy court's fee award under Sec. 506(b). We nonetheless remand to allow Sanson to seek the balance of its $197,500 claim under Sec. 502. We express no opinion on the enforceability under the governing state law of the deed of trust's attorney's fees provision.
 
 
 27
 AFFIRMED in part and REMANDED.
 
 
 
 [1]
 Section 506(b) reads:
 To the extent that an allowed secured claim is secured by property the value of which, after any recovery allowed under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.