**In re STANDARD BUILDING ASSOCIATES, LTD., Debtor.**

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF WARNER ROBINS, Movant,**

v.

**STANDARD BUILDING ASSOCIATES, LTD., Respondent.**

**Bankruptcy No. A86–08308–SWC.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 15, 1988.

James L. Paul, Gambrell, Clarke, Anderson & Stolz, Atlanta, Ga., for Standard Bldg. Associates.

Frank Wilensky, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, Ga., for First Federal.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

This matter came on for trial on motion of First Federal Savings & Loan Association of Warner Robins ("First Federal") for relief from the automatic stay. The case relates to the sole asset of the debtor, a commercial office building located at 92 Luckie Street, N.W., Atlanta, Fulton County, Georgia 30303, known generally as the Standard Building. First Federal is the holder of the first priority deed to secure debt on that property. The motion came on for hearing at which time both movant and respondent appeared and presented evidence. In addition, the court has previously twice considered the value of the Standard Building in Adversary Proceeding No. 86–0811A. Based upon the evidence presented and the record herein, the court finds this matter to constitute a core proceeding within the meaning of 28 U.S.C. Section 157(b)(2)(G). The court's findings of facts and conclusions are as more fully set forth herein.

### Jurisdiction

The court first addresses the question of its jurisdiction to consider First Federal's motion to lift stay in view of the pendency of First Federal's appeal from this court's order and judgment of October 30, 1987 in the aforesaid adversary proceeding. In that proceeding the debtor and First Federal disputed the issue of title or ownership of the Standard Building. Based on the evidence presented, this court concluded in the October 30, 1987 order and judgment that First Federal's pre-petition foreclosure of the Standard Building was in violation of an informal agreement between counsel for the parties and was avoidable as a fraudulent transfer under Section 548 and as a preference under Section 547 of the Bankruptcy Code. First Federal's appeal of that decision is currently pending in the District Court.

The court recognizes the well-established rule that an appeal divests this court of jurisdiction with regard to the issues involved in the appeal. *Tesoro Savings & Loan Assoc. v. Fargo Financial, Inc. (In re Fargo Financial, Inc.)*, 71 B.R. 702 (Bankr.N.D.Ga.1987); *Ingersoll–Rand Financial Corp. v. Kendrick Equipment Corp. (In re Kendrick Equipment Corp.)*, 60 B.R. 356 (Bankr.W.D.Va.1986); *Urban Development Ltd. v. Hernando New York Assocs. (In re Urban Development Ltd.)*, 42 B.R. 741 (Bankr.M.D.Fla.1984); *In re Hardy*, 30 B.R. 109 (Bankr.S.D.Ohio 1983); *Harsh Investment Corp. v. Bialac (In re Bialac)*, 15 B.R. 901 (9th Cir. BAP 1981). The rule, however, does not apply in a Chapter 11 context when other Chapter 11 issues not cognizable in the adversary proceeding are raised by, and between the same parties. *In re Urban Development Ltd.*, 42 B.R. at 743–45. *See also In re Hardy*, 30 B.R. at 111 (Chapter 13 context).

In addition, debtor contends that the doctrine of preclusion of inconsistent remedies prevents First Federal from proceeding with its motion to lift stay. *Deese v. Double D Dredging Co. (In re Double D Dredging Co.)*, 467 F.2d 468 (5th Cir.1972). Specifically, debtor contends that in the adversary proceeding (*Standard Building Associates, Ltd. v. First Federal Savings & Loan Association of Warner Robins,*

Adversary Proceeding No. 86–0811A), First Federal claimed it was an owner, rather than a secured creditor, of the Standard Building. This court rejected First Federal's contentions and invalidated First Federal's foreclosure. As previously noted, First Federal has appealed that order and judgment and continues to contend in the District Court that its foreclosure was valid and that it owns the Standard Building. In the motion presently before this court, First Federal seeks relief from the automatic stay in its capacity as a secured creditor, as determined by this court. Debtor contends that the doctrine of inconsistent remedies precludes First Federal's prosecution of this motion.

The court concludes, however, that the issues in the adversary proceeding are different from those in the instant motion to lift stay. Specifically, the adversary proceeding involved issues relating to the breach of an agreement concerning forbearance on foreclosure, a fraudulent conveyance under Section 548 and a preferential transfer under Section 547 of the Bankruptcy Code. The issues in the instant motion are: (1) the nature and amount of the secured claim of the movant; (2) whether there is equity in the collateral; (3) whether the collateral is necessary for an effective reorganization of the debtor; (4) whether movant is adequately protected within the meaning of Section 362 of the Bankruptcy Code; and (5) whether there is a reasonable likelihood of a reorganization. Thus the issues presented here, while somewhat related, are not the same.

This court concludes, therefore, that the subject motion raises Chapter 11 issues which were not cognizable in the adversary proceeding. Since the issues are different, this court has not been divested of jurisdiction to hear this motion to lift stay. Furthermore, the court concludes that the doctrine of preclusion of inconsistent remedies, as argued by debtor, is inapplicable.

Although the adversary proceeding order and judgment of October 30, 1987 has been appealed, it has not been stayed. There-fore, that order and judgment is valid, outstanding, and enforceable. Accordingly, the court concludes that it has core matter jurisdiction with regard to this motion that is unaffected by the pending adversary appeal.

### Motion to Lift Stay

In considering the merits, the court finds that First Federal's motion to lift stay should be denied for the reasons expressed below.

A motion to lift stay can be denied when there is an equity cushion sufficient to protect the secured creditor. *Prudential Insurance Co. of America v. Monnier (In re Monnier Brothers)*, 755 F.2d 1336, 1340 (8th Cir.1985); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 376, 383 (Bankr.E.D.Pa.1987); *Delaware Valley Savings & Loan Assoc. v. Curtis (In re Curtis)*, 9 B.R. 110, 112 (Bankr.E.D.Pa.1981); *City National Bank v. San Clemente Estates (In re San Clemente Estates)*, 5 B.R. 605, 609–10 (Bankr.S.D.Calif.1980). In seeking relief from the automatic stay, the moving creditor has the burden of proof on the issue of whether there is equity in the debtor's property pursuant to 11 U.S.C. Section 362(g)(1). In this case, First Federal has failed to carry the burden of proof on the issue of debtor's equity in the property. Whether there is equity involves a consideration of two issues, the amount of the secured indebtedness held by First Federal and the value of the collateral pledged to secure it.

### The Amount of Indebtedness Held by First Federal

The evidence relating to the indebtedness to First Federal is virtually undisputed. First Federal contends the amount of indebtedness is approximately $2,748,737.55 consisting of the following components:

| | |
|---|---|
| Principal | $1,976,613.00 |
| Interest | $ 423,542.68 |
| Late Fees | $ 20,463.92 |
| Costs | $ 19,288.58 |
| Attorney's Fees | $ 308,829.37 |

Debtor challenges First Federal's claimed attorney's fees of $308,829.37 and an unspecified amount of the interest claimed. While some questions have been raised regarding the computation of interest, the debtor has the burden of proof on this point. Under 11 U.S.C. Section 362(g)(2) debtor has failed to carry its burden. The court therefore finds the principal amount of the indebtedness held by First Federal is $1,976,613.00, and the interest through January 11, 1988 is $423,542.68. The court also finds the secured indebtedness includes late fees of $20,463.92 and costs of $19,288.58. However, the $308,829.37 of attorney's fees claimed by First Federal cannot be allowed.

Under the former Bankruptcy Act, the courts held that when the notice of attorney's fees was not given until after the commencement of a Chapter X reorganization, the attorney's fees lien was not perfected, and the Bankruptcy Court had the power to award "reasonable attorney's fees" rather than attorney's fees at the contract rate. *See Security National Bank v. Cotton (In re Atlanta International Raceway, Inc.)*, 513 F.2d 546 (5th Cir.1975). By contrast, under the Bankruptcy Act, when the attorney's fees notice was given prior to the commencement of a Chapter XI reorganization case, the attorney's fees lien was deemed perfected, and the secured creditor was allowed to claim and collect attorney's fees at the contract rate as a part of the secured indebtedness. *National Acceptance Co. v. Zusmann*, 379 F.2d 351 (5th Cir.); *cert. denied*, 389 U.S. 975, 88 S.Ct. 478, 19 L.Ed.2d 469 (1967). *See also Mills v. East Side Investors (In re East Side Investors)*, 702 F.2d 214 (11th Cir.1983) (Chapter XII reorganization under Bankruptcy Act).

However, the Bankruptcy Code changed the law applicable to attorney's fees of secured creditors in reorganization cases. Section 506(b) of the Code specifically provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable* fees, costs, or charges provided for under the agreement under which such claim arose. (emphasis supplied).

The Fifth and Ninth Circuits have specifically considered the effect of Section 506(b) on attorney's fees claimed by secured creditors pursuant to contracts and state statutes. *Blackburn–Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)* 794 F.2d 1051 (5th Cir.1986); *Joseph F. Sanson Investment Co. v. 268 Ltd. (In re 268 Ltd.)*, 789 F.2d 674 (9th Cir.1986). In *In re Hudson Shipbuilders, Inc.*, and *In re 268, Ltd.*, these two circuits have specifically held that Section 506(b) preempts state law as to attorney's fees. Both circuits determined that the policies for court-determined attorney's fees awards set out in Section 506(b) are much more consistent with the policies and goals of reorganizations than are attorney's fees set by contract and state statutes. They likewise held that any attorney's fees awarded a secured creditor must be awarded under the usual guidelines for awarding attorney's fees under the Bankruptcy Code. *In re Hudson Shipbuilders, Inc.*, 794 F.2d at 1054–58; *In re 268 Ltd.*, 789 F.2d at 675–78. *See also Unsecured Creditors' Committee v. Walter E. Heller & Co. Southeast (In re K.H. Stephenson Supply Co.)*, 768 F.2d 580 (4th Cir.1985); *Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.)*, 639 F.2d 1197 (5th Cir.1981); *American Benefit Life Insurance Co. v. Baddock (In re First Colonial Corp. of America)*, 544 F.2d 1291, 1298–1300 (5th Cir.), *cert. den.* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); *In re Dooley*, 41 B.R. 31 (Bankr.N.D.Ga.1984); *Bank of New Jersey v. Larson (In re Kennedy Mortgage Co.)*, 23 B.R. 466, 473–474 (Bankr.D.N.J.1982); *In re Elmwood Farm, Inc.*, 19 B.R. 338, 341 (Bankr.S.D.N.Y. 1982).

Further, the court in *In re 268 Ltd., supra,* held as follows:

To give § 506(b)'s limitation meaning, we must read it to provide for an *ex post* reasonableness determination by the bankruptcy court ...

Section 506(b)'s legislative history also favors reading the statute as preempting the state law governing the reasonableness of fee provisions ...

State law thus functions as a default rule for the determination of property interests in a bankruptcy proceeding. *Butner* [*Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)] does not, however, require that we read § 506(b) to enforce contractual fee arrangements simply because the state law governing the contract would do so. Congress has chosen to treat contractual fees as part of the secured claim only to the extent that they are "reasonable." This express displacement of any contrary pre-bankruptcy state law entitlement of the oversecured creditor takes this case outside of *Butner*'s default provision.

789 F.2d at 676–77.

■ Similarly, in *ITT Industrial Credit Co. v. Scarboro (In re Scarboro)*, 13 B.R. 439 (M.D.Ga.1981), the District Court reached the same conclusion in reference to the specific Georgia statute [formerly O.C. G.A. Section 20–506(b) (1977), now O.C.G.A. Section 13–1–11 (Michie 1982)] on which First Federal relies. In *In re Scarboro*, Judge Owens held that Section 506(b) of the Bankruptcy Code and its reasonableness standard controlled rather than Georgia law. He went on to hold that attorney's fees can only be awarded to secured creditors under the guidelines set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and *In re First Colonial Corp. of America, supra. In re Scarboro*, 13 B.R. at 442–44.

The rationale of the aforementioned cases is persuasive. Accordingly, this court concludes that Section 506(b) of the Bankruptcy Code preempts O.C.G.A. Section 13–1–11. As a result, First Federal is only entitled to attorney's fees pursuant to proof in accordance with the guidelines of *Johnson* and *In re First Colonial Corp. of America.*

■ In the instant case, First Federal has made no attempt to comply with the case guidelines. The only evidence concerning actual attorney's fees is the testimony of First Federal's officer, Ms. Glasgow who testified to actual attorney's fees of approximately $55,308.19. First Federal has failed to offer any record of time and labor or other proof to support the reasonableness of such fees. The court finds that First Federal has failed to carry its burden of proof regarding its claim for attorney's fees.

■ The court also finds that, even if Section 506(b) of the Bankruptcy Code did not preempt O.C.G.A. Section 13–1–11, First Federal still has failed to prove that it is entitled to attorney's fees. To perfect any claim for attorney's fees for nonpayment of the principal amount of the indebtedness, a secured creditor must prove the secured indebtedness has been accelerated and the indebtedness has matured. *Specialty Investment Corp. v. Village Apartment Assocs. (In re Village Apartment Assocs.)*, 9 B.R. 211, 215 (Bankr.N.D.Ga. 1981). The security deed note in the instant case does not provide for the automatic acceleration of the indebtedness in the event of default nor does it provide for waiver of notice of such acceleration. Rather, First Federal has the option to accelerate. [*See* Movant's Exhibit # 3] However, Article II, Paragraph 2.02, Subparagraph (a) of the deed to secure debt appears to contain such a waiver of notice of acceleration. [*See* Movant's Exhibit # 2] Therefore, the two documents appear to be in conflict. Construing the documents most strongly against First Federal as drafter thereof, the court determines that, in the event of default, there is no automatic acceleration of the indebtedness nor is there a waiver of notice of such acceleration. [*See C.A. May Marine Supply Co. v. Brunswick Corp.*, 557 F.2d 1163, 1165 (5th Cir.1977); O.C.G.A. Section 13–2–2(5) (Michie 1982)].

In this case, there is no evidence that First Federal ever communicated to debtor

that it was exercising its option to accelerate the indebtedness. First Federal contends that the purported notice of attorney's fees constitutes such notice of acceleration. These letters dated october 7, 1986 appear to provide notice in compliance with O.C.G.A. Section 13–1–11 regarding notice of intent to collect attorney's fees. They do not contain language sufficient to put debtor on notice that First Federal has or is exercising its option to accelerate the indebtedness.

Finally, the court notes that a Chapter 11 debtor has the right to decelerate the indebtedness under the provisions of the Bankruptcy Code. If exercised, the effect would be to restore parties to their status prior to any default and acceleration, even assuming a proper acceleration. Based on the foregoing, the court concludes that none of the $308,829.37 in attorney's fees should not be included as a part of the secured indebtedness held by First Federal. Thus, the total secured indebtedness of First Federal, as of January 11, 1988, is determined as follows:

| | |
|---|---|
| Principal | $1,976,613.00 |
| Interest | 423,542.68 |
| Late Fees | 20,463.92 |
| Costs | 19,288.58 |
| Total | $2,439,908.18 |

### Value of the Collateral

The next issue regarding equity is the value of the collateral. At the hearing on the present motion, debtor's appraiser, Claude R. Moore, Jr., testified that under certain assumptions, the value of the Standard Building was $3,067,000.00. On the other hand, First Federal's appraiser, Stewart Wight, testified the value was $1,600,-000.00.

The issue of value has been considered by the court on three different occasions. The court has heard testimony from three different appraisers, two presented by First Federal and one by the debtor.

Based upon the initial showing at the preliminary injunction, the court concluded that the evidence was sufficient to warrant the imposition of a preliminary injunction. During the trial of Adversary Proceeding No. 86–0811A, debtor's appraiser, Mr. Moore, testified that the value of the Standard Building was $3,067,000.00 as of November 4, 1986. Mr. Wight, First Federal's trial appraiser, testified to a value of $1,775,000.00. After consideration of the evidence and testimony of both appraisers, the court determined that the testimony of Mr. Moore was more credible. Accordingly, the court found in its October 30, 1987 order in the adversary proceeding that the value of the property as of November 4, 1986 was $3,067,000.00.

At the hearing on the present motion, Mr. Moore testified that the value of the Standard Building as of January 4, 1988 was essentially unchanged from his earlier opinion. He stated that the Standard Building has a value of $3,067,000.00 on the basis of certain assumptions, one of which is a fully rented property with a ten percent vacancy at market rental rates.

Mr. Wight also testified at the motion hearing that the value of the Standard Building as of January 4, 1988 was $1,600,-000.00. The court finds little new in Mr. Wight's testimony except that his latest testimony regarding value includes an analysis based in part upon his review of the actual expenses of this property for the prior eleven months projected on a twelve month basis. The court does not find Mr. Wight's credibility has changed. The testimony of Mr. Moore is more persuasive. Although First Federal raised some questions concerning the details of Mr. Moore's analysis, the court finds that $3,067,000.00 appears to be a fair value for the property given the assumptions made by Mr. Moore.

The court further finds, however, that this property does not meet all of the assumptions at this time. If anything, it appears to be in no better position, perhaps a slightly less advantageous position, than

it was at the time this court made its original determinations of value. Based upon the income from actual rents and the operating expenses experienced by this property, the effective operating value is something less than $3,067,000.00.

In this regard, the court heard conflicting evidence concerning the rentable square footage of the property. There was testimony that under different assumptions the property had rentable space of 32,710, 30,224, and 29,530 square feet respectively. Based on the evidence presented and recognizing the subjective nature of valuation, the court determined that 30,224 square feet should be used as the amount of rentable space. It also appears that, because of debtor's distressed financial situation, the actual rental rates obtainable are apt to be lower than the estimated market rental rates.

■ As previously noted, the court finds that the $3,067,000.00 value attributed to the Standard Building by Mr. Moore is a fair valuation based on the assumptions that he made. However, that value needs to be adjusted downward to take into consideration the presence of these other factors. Accordingly, considering the methodology as testified to by Mr. Moore and making adjustments for the variations in rentable square footage and the difficulty experienced in renting the property at market rates, the court finds the value of the subject property to be $2,870,000.00 at the time of the hearing on this motion. The $2,870,000.00 in value is collateral securing the $2,439,908.18 indebtedness to First Federal. This leaves an equity cushion in the subject property of approximately $430,000.00. Accordingly, the court concludes that First Federal is an oversecured creditor.

The court finds further that the Standard Building is the principal asset of the debtor and that the retention of the Standard Building by the debtor is essential to any reorganization in this case. There are two plans presently before the court. There appears, therefore, to be a reasonable likelihood that a reorganization is possible in this case. Accordingly, First Federal's mo-tion to lift stay under Section 362(d)(2) of the Bankruptcy Code is denied.

### Adequate Protection

■ Since there is an equity cushion in the subject property in excess of $430,-000.00, the court concludes that the equity cushion is sufficient to provide adequate protection to First Federal. The debtor is authorized to continue the operations of the property without prejudice to the rights of First Federal, or any other party, to move for such other relief as they may deem to be appropriate to protect their interest, including the appointment of a trustee if the circumstances warrant. No other "cause" for lifting the stay has been proven. Consequently, First Federal's motion to lift stay under Section 362(d)(1) of the Bankruptcy Code is also denied. However, the court will review the issue of adequate protection in one hundred twenty (120) days from the trial of this motion held on January 19, 1988, to consider whether further protection is needed at that time to afford adequate protection to First Federal. This will also give time for further proceedings on the pending plans.

### Debtor's Operations Since Filing Of The Petition

■ The court finds the performance of debtor's present management of the Standard Building to be subject to question. While the building maintenance and appearance have been improved, there has been little or no change in its financial position from a year ago. Likewise, the overall economic ability of the debtor to service debt or formulate a cash flow based plan does not appear to have materially changed. This does not preclude debtor's proposal of a plan, but it certainly raises questions concerning the viability of this management and of any plan which does not include an infusion of new funds.

Furthermore, the court was shocked to learn that debtor, without authorization or knowledge of this court, has been paying monthly expenses of a related Chapter 11 debtor. Testimony indicated unrecorded payments in excess of $28,000.00. While

the court is aware of debtor's representation that this deficit had been or would be promptly cured, no showing of payment has been made. In addition, debtor's inability during these hearings to state a published rental rate, debtor's continued leasing at rental rates substantially below market rates and debtor's failure to address problems of past due rents and high rates of taxation of the property, raise further questions concerning this management. For these reasons, the court finds it necessary to limit the debtor-in-possession's operating powers and authority. Accordingly, it is ORDERED that First Federal's motion to lift stay is DENIED based on this court's conclusion that First Federal is an oversecured creditor and that its interest at the present time is adequately protected by the equity cushion in the subject property, and it is

FURTHER ORDERED that the court will limit the authority of the debtor and the leasing agent to lease any further space in the Standard Building without first obtaining the consent of First Federal or court authorization, after notice and hearing, and it is

FURTHER ORDERED that any further payments of expenses of the Herren's Building shall be terminated forthwith, and there shall be no further payments of expenses for that building's operation from this debtor's assets, and it is

FURTHER ORDERED that the court will permit debtor to continue its operations of the Standard Building but without prejudice to the rights of First Federal or other interested parties to move for such other relief as may be appropriate to protect the estate and interests of creditors, including the appointment of a trustee if warranted.

IT IS SO ORDERED.