**In re DWS INVESTMENTS, INC., Debtor.**

**Bankruptcy No. SA 89–05013 JR.**

United States Bankruptcy Court, C.D. California.

Nov. 19, 1990.

Richard D. Brady, Costa Mesa, Cal., for debtor.

Greg W. Jones, Hathaway, Perrett, Webster, Powers & Chrisman, Ventura, Cal., for claimants.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Julian J. Bortolin, Trustee of the Western Educational Services, Inc. Pension Plan (the "Western Plan") and Michael F. Perrett and John R. Webster, Trustees of the Hathaway, Perrett, Webster, Powers & Chrisman Money Purchase Pension Trust (the "Hathaway Trust") (together "Claimants") filed secured claims for their respective entities (the "Claims"). Debtor objected to the Claims on a number of grounds. At the hearing on September 11, 1990, I made certain rulings with regards to these objections. For example, I ruled that Hathaway Trust had the right to recover advances made to Western Plan. I also held that the ten percent service charge on these advances was reasonable. Furthermore, I upheld the late charge of 10% on untimely installment payments and made an award of attorney's fees and foreclosure costs incurred in setting various foreclosure sale dates. I did not rule on debtor's objection to the 25% default interest

rates on the matured indebtednesses of the Claimants. I requested additional briefing on the enforceability of the default interest rates under § 506(b) of the Bankruptcy Code and took the matter under submission.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF FACTS

The Western Plan filed a secured claim for $189,892.60, calculated as of September 11, 1990 (the "Western Claim"). The Western Claim is secured by a first deed of trust on debtor's Siskiyou County property (the "Siskiyou Property"). The Hathaway Trust filed a secured claim of $97,505.79, calculated as of the same date (the "Hathaway Claim"). It has a second deed of trust on the Siskiyou Property. Debtor values the Siskiyou Property at $750,000. An appraisal submitted by the Hathaway Trust lists a value at $658,000. Using either valuation, Claimants are oversecured. The Western Claim is evidenced by a promissory note in the principal amount of $150,000 at an interest rate of 14% per annum, with the entire principal balance and accrued interest due and payable on July 6, 1989 (the "Western Note").

The Hathaway Claim is evidenced by a promissory note for the principal amount of $39,650 at an annual interest rate of 15%

(the "Hathaway Note"). The Hathaway Trust advanced interest and late charges on the Western Note from October 1988 through July 1989. The entire principal balance and accrued interest is due and payable on or before June 13, 1989.

On or about January 31, 1989, Residential Development, Inc., debtor's predecessor in interest, conveyed to debtor the Siskiyou Property subject to the Western Note and Hathaway Note. At the time of sale, the Hathaway Trust received payments of $18,280.44 which cured the arrearages on the Hathaway Note and advanced payments through January 31, 1989.

The Western and Hathaway Notes provide that should the principal balance and interest not be paid on maturity, then the interest rate on the principal balance shall be increased to 25% per annum.

Debtor filed its plan of arrangement in August 1989 (the "Plan"). The Western and Hathaway Notes had matured prior to the bankruptcy filing. The Claimants calculated post-default interest at 25% per annum. Debtor objected arguing that the post-petition interest rate should be at market and not at the contract default rate.

Debtor seeks to have the Claims determined so that it can proceed with the Plan. Under the Plan, debtor proposes to satisfy the Claims by paying 100% either (1) at the end of 60 months, with payment of monthly interest at 14% and 15% for the Western and Hathaway Claims, respectively; or (2) at the end of 12 months without interest. Claimants are impaired under the Plan because the notes will not be paid in accordance with their terms.

## DISCUSSION

 The issue is whether under § 506(b) this court is bound to apply post-petition the default interest rates in determining the amount of the Claims. Section 506(b) applies when the claims are oversecured.[1]

---

1. Section 506(b) states that "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to

the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

The Ninth Circuit generally has held that the contract rate applies to the calculation of interest under § 506(b). *Matter of 268 Ltd.*, 789 F.2d 674, 676 (9th Cir.1986).[2] For example, in *In Matter of Glenn*, 796 F.2d 1144 (9th Cir.1986), the court applied a contract rate of 18% to an oversecured claim stating that "The Glenn's argument entirely ignores § 506(b), which allows post-petition interest at the contract rate." *Id.* at 1147. The Bankruptcy Appellate Panel ("BAP") in *In re Anderson*, 69 B.R. 105 (9th Cir.1986), also applied the pre-default contract rate of 8–¾% post-default, absent a default rate specified in the contract. As the court stated, "Under § 506(b), when an oversecured creditor seeks interest on its claim, the bankruptcy courts apply the interest rate provided for in the contract." *Id.* at 108. These cases, therefore, generally require reference to the contract rate of interest when calculating interest under § 506(b).

Should this general rule absolutely apply when calculating default interest under § 506(b)? Judge Bufford in *In re Skyler Ridge*, 80 B.R. 500 (Bankr.C.D.Cal.1987), applied § 506(b) to a default interest rate. He held that an oversecured creditor should receive interest at the contract rate, whatever that contract rate may be, and, therefore, any limitation on the contract rate of interest must come from state law. *Id.* at 511. In looking at Kansas state law, Judge Bufford determined that no restriction on the chargeability of a higher default rate of interest applied. *Id.* He further concluded that "Apart from usury and unconscionability, the court has no power to determine the reasonableness of a default interest rate." *Id.*

2. The Ninth Circuit stated in *268 Ltd.* that "The interest provision is not subject to the reasonableness limitation. When an oversecured creditor seeks interest on his or her claim, the bankruptcy courts apply the security agreement's interest rate." 789 F.2d at 676.

3. The court commented that "We recently had occasion to reiterate the federal bankruptcy law not state law, governs the distribution of a bankrupt's assets to his creditors.... We stated in both *Prudence* opinions that the federal law governing the distribution of a bankrupt's estate

In *Skyler*, Judge Bufford acknowledges contrary authority of *In re W.S. Sheppley & Co.*, 62 B.R. 271 (Bankr.N.D.Iowa 1986). In *Sheppley*, Judge Yacos concluded that under § 506(b) a bankruptcy court is not bound to a contractual *default rate of interest*. *Id.* at 278. In support of his view, he cites two Supreme Court cases, *American Surety Co. v. Sampsell*, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663 (1946), and *Vanston Bondholders Prot. Com. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). In *American Surety*, the Supreme Court held that contractual and statutory rights under state law need not be applied literally in a bankruptcy proceeding when to do so would produce an inequitable result. 327 U.S. at 272, 66 S.Ct. at 573.[3] In the *Vanston* case, the secured creditor sought interest on interest on its oversecured obligation. In denying payment of interest on interest, the Supreme Court stated that "It is manifest that the touchstone of each such decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditor and the debtor." 329 U.S. at 165, 67 S.Ct. at 241.

Based on his review of the *Vanston* and *American Surety* cases, Judge Yacos held that a flexible approach in determining whether a default rate of interest should apply is appropriate. He stated that "The rationale of the *Vanston* case, in terms of balancing the equities, still applies under the present non-specific provisions of § 506(b) of the current Bankruptcy Code." 62 B.R. at 278. Judge Yacos then set forth certain factors that he felt supported a finding that the default rate of interest was inappropriate. *Id.*[4]

should be applied with 'appropriate regard for rights acquired under rules of state law ...' with the extent to which state law is to be so considered is in the last analysis a matter of federal law." 327 U.S. at 272, 66 S.Ct. at 573.

4. The factors were (1) Whether the creditor faced a realistic risk of nonpayment of its debt before or during the Chapter 11 case; (2) the relation between the default contract rate of interest and the market rate; (3) whether the debtor proposes a long term reorganization program which give rise to increased risk for the

In *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Supreme Court recently interpreted § 506(b) and held that interest applied to nonconsensual oversecured claims as well as consensual claims. It determined that the phrase in § 506(b) "interest on such claim" was not limited by the following language "provided for under the agreement under which such claim arose." [5] The Supreme Court found the plain meaning of the statute supported its position. It further stated that the plain meaning should be conclusive, except in rare cases where literal application of the statute produces a result clearly at odds with the intention of the drafters of the statute. 489 U.S. at 242–43, 109 S.Ct. at 1031, 103 L.Ed.2d at 299. The Supreme Court concluded that its interpretation of § 506(b) does not conflict with any other section of the Code, important state or federal interest, or legislative history. *Id.* The debtor argued that practice prior to the Code distinguished consensual and nonconsensual liens when determining entitlement to post-petition interest. The Supreme Court reviewed pre–Code practice and found that there was no clear rule of law on this point. The Supreme Court acknowledged, however, that there were exceptions to the general rule denying post-petition interest rates, and that these were consistent with the flexible guidelines and balancing of equities acknowledged in the *Vanston* case. 489 U.S. at 247–49, 109 S.Ct. at 1033–34, 103 L.Ed.2d 302–03. The Supreme Court, however, noted that Congress had enacted through the Code a contrary standard, and Congress, therefore, was not required to repudiate earlier contrary views. The goal of Congress with the Code was to codify creditor's rights more clearly than was done through case law. *Id.* 489 U.S. at 248–49, 109 S.Ct. at 1034–35, 103 L.Ed.2d at 303.

In the *In re Entz–White Lumber and Supply, Inc.,* 850 F.2d 1338 (9th Cir.1988), the Ninth Circuit held that a note that had matured prior to bankruptcy could be cured through a plan by the payment of arrearages and principal. The lender argued for the higher default rate of interest in calculating the interest arrearages. In rejecting this argument, the court stated that the debtor had the right to cure and cure means to rectify the default. *Id.* at 1342. In making its arguments, the secured creditor asserted that as an oversecured creditor it was entitled under § 506(b) to interest at the contract rate, including the post-default interest rate. *Id.* at 1342. In responding to this argument, the court acknowledged that the plan provided for payment of interest at the pre-default rate, and to allow otherwise would eliminate the benefits of cure. The court further stated that "The more natural reading of sections 506 and 1124 [6] is that the interest awarded should be at the market rate or at the pre-default rate provided for in the contract." *Id.* at 1343. In a footnote to this reference, it also stated that "We continue, of course, to recognize bankruptcy courts' 'broad equitable discretion' in awarding

creditor; (4) whether the debtor's plan proposes to pay a dividend security or interest holders; and (5) whether the creditor has or necessarily engaged in obstructive tactics. *Id.* at 278–79.

5. The IRS appealed the lower court decision denying its claim for post-petition interest on an oversecured tax lien. A split of authority had developed in the circuits on this issue. Some courts held that § 506(b) permitted interest only on a consensual claim interpreting the language "under the agreement under which such claim arose" as controlling the phrase "interest on such claim". The Supreme Court analyzed the language of § 506(b) and found that the natural reading of the phrase "interest on such claim" entitled the holder of an oversecured claim to post-petition interest. An oversecured claimant further has a right to reasonable fees, costs and charges provided for in the agreement. 489 U.S. at 240–41, 109 S.Ct. at 1030, 103 L.Ed.2d at 298. Therefore, absent an agreement, post-petition interest is the only added recovery available for the holder of an oversecured claim. The court also stated that its reading was consistent with the grammatical structure of the statute. Since the comma follows "interest on such claim", it stands independent of the following language.

6. The secured creditor argued that, under § 1124(2) which determines whether a party is impaired by a Chapter 11 reorganization plan, "cure" is applicable only to obligations that have been accelerated due to default. *Id.* at 1340–41.

post-petition interest. See *In re Anderson*, 833 F.2d 834, 836 (9th Cir.1987)." *Id.* fn 9.

The obvious tension here in applying § 506(b) is whether I am bound to apply the default interest rate that the parties agreed to when contracting, or whether I have the flexibility to balance the equities in determining the applicability of the contract default interest rate. A reading of § 506(b) is not helpful despite the Supreme Court's guidance in statutory construction as set forth in *Ron Pair*. In *Ron Pair*, the Supreme Court held that the language in § 506(b) relating to interest is independent of the language that follows pertaining to terms "under the agreement." So, reading the statute does not answer the question. Although the Ninth Circuit in dicta has referred to the contract interest rate, it recognized in footnote 9 of *Entz–White* the broad equitable powers of the bankruptcy court to determine post-petition interest. Obviously, the award cannot be inconsistent with the Code, because as the Supreme Court stated in *Ron Pair*, Congress did codify many pre-Code decisions into the Code. Although allowing interest on oversecured claims, it did not say how interest was to be determined. Congress left that to the courts. Given this fact, the *Vanston* decision is still good law. As previously mentioned, *Vanston* rejected interest on interest as provided in an oversecured note. *Vanston* further left to the bankruptcy court the broad discretion to balance the equities between the creditors and the debtor.

Claimants seek post-petition interest at the default rate of 25%. They claim this is the rate they use in other transactions. They, however, offer no evidence to show that this is an industry standard. Further-

more, they did not show that this rate has any relation to the market rate of interest. A default rate of interest should not be a penalty. Rather, it should be a means for compensating the creditor for any loss resulting from the nonpayment of principal at maturity. Claimants have not shown that the 25% rate has any relationship to actual or projected loss as a result of nonpayment. *Ron Pair* supports the view that unless the statute expresses a contrary view, pre-Code law should apply. Section 506(b) does not specify the contract rate in calculating interest on oversecured claims. On the other hand, pre-Code law does empower the bankruptcy judge to balance the equities in determining the appropriate interest rate.

■■■ Accordingly, in applying a default interest rate under § 506(b), I choose to adopt the flexible approach initially set forth in *Vanston* and later adopted by Judge Yacos in *Sheppley*. Usually, the court should apply the contract rate, but it has the power to apply a different rate depending upon equitable considerations. Claimants ask me to accept a default interest rate of 25%. This seems excessive. Claimants offer no evidence to justify this rate other than it is the rate they use for other transactions. I have no evidence that this rate approximates the market rate for similar loans with borrowers in similar circumstances at the time of the default. The estate is insolvent and the unsecured creditors are unlikely to receive a distribution unless the Plan is confirmed. In order for the Plan to consummate, substantial funding is required from the principals. Furthermore, under California law I question whether this rate would be legal.[7]

---

7. The leading case in California relating to default interest rate on principal due and payable at maturity is *Thompson v. Gorner*, 104 Cal. 168, 37 P. 900 (1894). In *Thompson*, the court held that the clause in a promissory note providing for a higher rate of interest if principal or interest is not paid when it becomes due is not a penalty, but rather a contract to pay a higher rate upon the failure to make the payment of principal when due. In California, the term "penalty" traditionally has been used to designate a charge which is deemed to be void because it cannot qualify as a proper liquidated

damages. See *Better Food Markets v. Amer. Dist. Dis. Teleg. Co.*, 40 Cal.2d 179, 184, 253 P.2d 10 (1953). In effect it is a void charge within the meaning of § 1670 and 1671 of the California Civil Code. Section 1671 pertains to liquidation of damages for breach of contract and holds that a provision in a contract liquidating damages is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances at the time the contract was made. In *Garrett v. Coast & Southern Fed. Sav. & Loan Ass'n*, 9 Cal.3d 731, 108 Cal.Rptr. 845, 511 P.2d

Under these circumstances, I am unwilling to apply the post-default interest rate post-petition. As I see it, I can approve the pre-default interest rate for purposes of calculating post-petition interest or fix a different rate that provides some additional protection and compensation to Claimants. The parties did not provide me with any information to support a market rate higher than the pre-default rates. The pre-default rates are high. This is not a situation where the pre-default rates are low in comparison with market rates. In my judgment, the market rates and the pre-default rates are not divergent. Accordingly, I hold that the pre-default rates should apply in calculating post-petition interest under § 506(b).

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.

1197 (1973), the court held that charges based on the full amount of the principal rather than the amount due and owing, constituted a penalty and an attempt *to coerce time and payment by a forfeiture not reasonably calculated to compensate the lender for damages caused by the delay in payment.* Although *Thompson* would appear to uphold Claimants' default interest rate, the rate is unrelated to any reasonable calculation of damages. If the issue were reconsidered today, the California Supreme Court might distinguish *Thompson* and require that a default interest rate be reasonably calculated to compensate lender for damages. Therefore, it is my view that, despite *Thompson*, the validity of the default interest rate is in doubt under California law.