[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 17, 2001
THOMAS K. KAHN
CLERK

_____

No. 99-14875
_____

D. C. Docket No. 99-00142-CV-4


DANIEL A. WELZEL,

Debtor.

--------------------------------------------------------------------------------
DANIEL A. WELZEL

Plaintiff-Appellee,

versus


ADVOCATE REALTY INVESTMENTS, LLC,

Defendant-Appellant.


_____

No. 99-14876
_____

D. C. Docket No. 99-00145-CV-4


DANIEL A. WELZEL,

Debtor.

--------------------------------------------------------------------------------

ADVOCATE REALTY INVESTMENTS, LLC,

Plaintiff-Appellant,

KENNETH L. ROYAL,

Plaintiff,

versus

DANIEL A. WELZEL,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

**(December 17, 2001)**

Before TJOFLAT, EDMONDSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, MARCUS and WILSON, Circuit Judges, and COX[*], Senior Circuit Judge.

BIRCH, Circuit Judge:

This appeal requires us, as a matter of first impression in this circuit, to resolve two related issues under 11 U.S.C. § 506(b) (1994), a Bankruptcy Code provision that entitles oversecured creditors to reasonable attorney's fees, as part of

_____

[*]Chief Judge Anderson and Judge Hull recused themselves and did not participate in this decision.
Senior U.S. Circuit Judge Cox has elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

2

their allowed secured claim, if the fees were provided for in the loan contract under which the claim arose. The first issue concerns whether the bankruptcy court should apply the § 506(b) reasonableness standard to contractually set attorney's fees that vest pre-petition and that are enforceable under state law. If § 506(b) does so apply, the second issue concerns whether a claim for fees should be bifurcated between secured and unsecured claims based on the amount of fees deemed reasonable, or whether collection of such fees should be limited to an amount considered reasonable, with the balance disallowed. The district court ruled that § 506(b) applies to attorney's fees that vest pre-petition and that are enforceable under state law. The court rejected the bifurcation framework and held that fees deemed unreasonable under § 506(b) should be disallowed. We agree with the district court that § 506(b) is applicable, but we conclude that bifurcation is the correct result. We therefore AFFIRM in part and REVERSE in part.

## I. BACKGROUND

Darby Bank and Trust Company loaned over $1 million to Daniel A. Welzel. To effectuate the loan, Welzel executed several promissory notes that were secured by mortgages on properties he owned in the historic district of Savannah, Georgia. In the event of default, each note provided that "subject to any limits under applicable law," the lender would be entitled to its "costs of collection, including . .

3

. fifteen percent (15%) of the principal plus accrued interest as attorneys' fees."

R1-1 Exh. 1. Advocate Realty Investments, LLC later purchased these notes. Shortly before this purchase, Darby Bank notified Welzel in writing that his indebtedness was in default and that, as a result, the notes were immediately due and payable. In the written notice, Darby Bank also informed Welzel of its intention to invoke the attorney's fees provisions contained in the notes in accordance with O.C.G.A. § 13-1-11 (1982). Section 13-1-11 provides that from the date of such written notice, a debtor has ten days to pay the principal and interest due without incurring liability for the contractually set attorney's fees. Welzel did not pay the principal and interest within the ten day period. Upon expiration of the ten days, Welzel filed a petition for Chapter 11 relief, which subsequently was converted into a Chapter 7 liquidation.

After Welzel filed for relief, Advocate filed a secured claim for $1,125,464.47. The claim included $146,799.71 in contractually set attorney's fees, which represented an amount equal to 15% of principal plus accrued interest, as stipulated to in the notes. Approximately $40,000 of these fees were actually incurred by Advocate. Although Advocate had complied with O.C.G.A. § 13-1-11 with regard to the fees, the Bankruptcy Code, 11 U.S.C. § 506(b), provides that an

4

oversecured[1] creditor is entitled to *reasonable* attorney's fees as part of its allowed secured claim if the underlying loan contract provides for such fees. It is undisputed that Advocate is an oversecured creditor and that the $146,799.71 in attorney's fees were provided for in the notes. Welzel did dispute the inclusion of the contractually set attorney's fees as part of Advocate's secured claim because, he argued, the fees were unreasonable under § 506(b).

In response to Welzel's objection to Advocate's filed claim, the bankruptcy court addressed the relationship between O.C.G.A. § 13-1-11 and 11 U.S.C. § 506(b). The court found that, by virtue of O.C.G.A. § 13-1-11, Advocate's claim for contractually set attorney's fees had vested pre-petition and was an allowed claim under 11 U.S.C. § 502. The court ruled, however, that the fees were subject to the reasonableness standard contained in § 506(b). Fees determined to be reasonable under § 506(b) would be treated as a secured claim, the court concluded, with the balance of fees treated as an unsecured claim under § 502. The fees thus would be bifurcated into secured and unsecured portions.

Both parties appealed the bankruptcy court order to district court, and the appeals were consolidated. In reviewing the order, the district court agreed that

---

[1]An oversecured creditor is one whose claim is secured by collateral whose value exceeds the principal amount of the claim. Welzel admits that the value of the collateral securing Advocate's claim, the properties in the Savannah historic district, exceeds the amount of his debt to Advocate.

Advocate's contractually set attorney's fees were subject to the § 506(b) reasonableness standard. In contrast, the court disagreed with the bankruptcy court's ruling that the fees should be bifurcated into a secured claim for the portion of fees deemed reasonable and an unsecured claim for the portion deemed unreasonable. Reversing the bankruptcy court, the district court held that the portion of contractual attorney's fees found unreasonable under § 506(b) were not to be treated as unsecured claims under § 502, but were to be disallowed entirely.

Advocate then appealed, and a panel of our court, concluding that § 506(b) applied to the attorney's fees and that any fees deemed unreasonable should be disallowed, affirmed the district court decision. Welzel v. Advocate Realty Investments, LLC (In re Welzel), 255 F.3d 1266 (11th Cir. 2001). On Advocate's request for rehearing en banc, we voted to rehear the case and vacated the panel decision. Welzel v. Advocate Realty Investments, LLC (In re Welzel), 260 F.3d 1284 (11th Cir. 2001).[2]

Throughout this litigation, Advocate's position has been that because its contractually set attorney's fees vested prior to Welzel filing his petition, the fees

_____

[2]We specifically asked the parties to focus on the following question: In a bankruptcy proceeding where an over-secured creditor recovers its reasonable attorney's fees as a secured claim pursuant to a contractual attorney's fee agreement valid under the governing state law, is the bankruptcy court entitled to disallow that part of the fee determined to be unreasonable as a secured claim pursuant to 11 U.S.C. § 506(b)?

merged into its allowed secured claim on the Savannah properties and are allowed for that reason. As such, Advocate contends that the reasonableness standard of 11 U.S.C. § 506(b) does not apply to fees that vest pre-petition. Advocate instead argues that § 506(b) is meant to widen creditor protections by permitting a creditor to collect contractually set attorney's fees deemed reasonable by the bankruptcy court, even if such fees arise post-petition or are unenforceable under state law.

Alternatively, Advocate has argued that if § 506(b) is held to apply to contractually set attorney's fees that vest pre-petition, its claim should be bifurcated such that any portion of fees deemed reasonable constitutes part of its secured claim under § 506(b), with the balance treated as an unsecured claim under § 502. Advocate's contention is that § 506(b), at most, addresses whether a claim should be treated as secured or unsecured, while § 502 determines whether a claim should be allowed or disallowed. Because its claim for fees is allowable under § 502, Advocate asserts that, even under the worst case scenario, it is entitled to any portion of fees considered unreasonable as an unsecured claim.

In contrast, Welzel's position throughout this case has been that § 506(b) completely preempts state laws like O.C.G.A. § 13-1-11. Welzel contends that 11U.S.C. § 506(b) requires that the bankruptcy court subject all contractually set attorney's fees owed to an oversecured creditor — irrespective of whether they

vest pre- or post-petition or whether they are enforceable under state law — to the reasonableness standard. He further argues that § 506(b) limits the collection of fees to those deemed reasonable, with any portion of fees deemed unreasonable disallowed. That is, Welzel asserts that bifurcation between § 502 and § 506(b) is unwarranted because § 502 addresses allowability in general, while as § 506(b) addresses allowability in the particular context of contractually set attorney's fees. Equitable considerations, he elaborates, also support this reading of § 506(b). Consequently, Welzel asserts that the district court properly decided the § 506(b) issue and that the panel decision correctly affirmed.

## II. DISCUSSION

In reviewing the contentions of the parties, we note that, because only issues of law are contested, we review de novo the district court's conclusions concerning 11 U.S.C. § 506(b). Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1282 (11th Cir. 1998). We first address in section II.A whether the 11 U.S.C. § 506(b) reasonableness standard applies to Advocate's claim for attorney's fees, which vested pre-petition and are enforceable under state law. Concluding that § 506(b) does apply, we turn in section II.B to whether the bankruptcy court should bifurcate a claim for fees between secured and unsecured claims under § 506(b) and § 502 according to the reasonableness of the fees, or whether the court

8

should limit the collection of fees to those that are reasonable, with the balance disallowed.

A.    <u>Applicability of the § 506(b) Reasonableness Standard to Advocate's Claim for Attorney's Fees</u>

Historically, the amount and validity of claims made in bankruptcy proceedings were determined through reference to state law. See <u>Mills v. East Side Investors (In re East Side Investors)</u>, 694 F.2d 242, 244-46 (11th Cir. 1982) (per curiam). In 1978, Congress passed the Bankruptcy Reform Act, thereby altering the traditional relation between federal and state law in bankruptcy proceedings. The provision of the Act at issue here, now codified at 11 U.S.C. § 506(b), provides:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

With regard to this provision, Welzel concedes that Advocate has an allowed secured claim based on its promissory notes collateralized by the Savannah properties. He also acknowledges that Advocate is an oversecured creditor and that the attorney's fees arrangement was stipulated to in the loan contracts. The point at issue concerns whether the bankruptcy court must determine if Advocate's

9

contractually set fees constitute "reasonable fees" under § 506(b), or whether

Advocate automatically has a right to the entire fees because they vested pre-

petition and were enforceable under state law, here O.C.G.A. § 13-1-11.[3]

Our interpretation of the Bankruptcy Code must begin with its plain

language. Yates Dev., Inc. v. Old Kings Interchange, Inc. (In re Yates Dev., Inc.),

256 F.3d 1285, 1288-89 (11th Cir. 2001). In interpreting a Bankruptcy Code

section, we turn to the natural meaning of the terms employed therein except in the

rare circumstance where to do so would produce an absurd result. Id. We turn

---

[3]O.C.G.A. § 13-1-11 states in part:

(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:

. . . .

(3)     The holder of the note or other evidence of indebtedness or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.

It is undisputed that the lender complied with these provisions and that Welzel did not cure the default within ten days of receipt of the notice.

now to the language of 11 U.S.C. § 506(b), which is not ambiguous.

Section 506(b) clearly articulates that the attorney's fees arrangement must be spelled out in the loan contract between debtor and oversecured creditor, but the subsection does not draw a distinction between fees vested pre- or post-petition, as Advocate would have us conclude. Instead, the subsection refers blanketly to "reasonable fees," without differentiation based on the time the fees vested. Nor does the language of 506(b) indicate that just because a given fee arrangement is enforceable under state law, it should be exempt from the reasonableness standard. The literal language refers to whether the loan contract specifies the attorney's fees arrangement, not to whether the arrangement is enforceable under state law.

Furthermore, Congress has shown that when it wants to exempt a particular set of items from the reasonableness standard, it does so explicitly. With regard to interest payments on oversecured claims, § 506(b) conspicuously leaves out the adjective "reasonable," in contrast to the explicit reference to "reasonable fees, costs or charges." This indicates that Congress, by using "reasonable" with respect to one set of items but not another, acted purposefully in deciding whether to include or exclude the reasonableness standard. Cf. Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983) (citation omitted) ("[W]here Congress includes particular language in one section of a statute but omits it in another

11

section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.").  Had Congress intended to exclude a particular set of contractual attorney's fees from the reasonableness standard — because the fees either had vested pre-petition or were enforceable under state laws like O.C.G.A. § 13-1-11 — it would have spelled this out. Accordingly, we conclude that in the oversecured creditor context, § 506(b) applies a reasonableness standard across-the-board to all contractually set attorney's fees.

Our conclusion based on the plain language of § 506(b) is buttressed by several additional factors.  First, state statutes like O.C.G.A. § 13-1-11 focus on the *enforceability* of contractually set attorney's fees.  11 U.S.C. § 506(b), in contrast, focuses on the *reasonableness* of such fees.  Enforceability and reasonableness are not the same thing — a fee is not necessarily reasonable just because it is enforceable.  See Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.), 789 F.2d 674, 675-76 (9th Cir. 1986).  Therefore, even if contractually set attorney's fees owed to oversecured creditors are enforceable under state law because they are vested and comply with state notice procedures, it does not follow that the fees are per se reasonable under the Bankruptcy Code.  This demonstrates, in turn, that 11 U.S.C. § 506(b) adds a new level of scrutiny to fee arrangements that goes beyond state law requirements.

12

Second, when Congress intended for state law to control in the bankruptcy context, it said so with candor. See Patterson v. Shumate, 504 U.S. 753, 758, 112 S. Ct. 2242, 2246 (1992) (discussing Bankruptcy Code provisions in which Congress explicitly referenced state law). But 11 U.S.C. § 509(d) makes no such reference to state law. This further suggests that had Congress intended for state law to control whether § 506(b) comes into play, it would have articulated this intent explicitly in the subsection.

Third, although only persuasive in nature, the four circuits that have addressed the relation between state law and § 506(b) following the passage of the 1978 Act have concluded that the plain language of that subsection requires that contractually set attorney's fees be assessed for reasonableness, irrespective of their status under state law. See First W. Bank & Trust v. Drewes (In re Schriok Constr., Inc.), 104 F.3d 200 (8th Cir. 1997); Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.), 794 F.2d 1051 (5th Cir. 1986); In re 268 Ltd., 789 F.2d 674 (9th Cir. 1986); Unsecured Creditors' Comm. 82-00261c-11A v. Walter E. Heller & Co. S.E., Inc. (In re K. H. Stephenson Supply Co.), 768 F.2d 580 (4th Cir. 1985). Such consistent conclusions among the circuits indicates that our statutory interpretation of 11 U.S.C. § 506(b) does not stray from the mark.

13

Fourth and finally, we note that our interpretation of the § 506(b) statutory language accords with the legislative history surrounding the provision. Other circuits have undertaken an exhaustive review of both the legislative history and the evolution in statutory language of § 506(b), which, for the sake of brevity, we do not reproduce here. See In re 268 Ltd., 789 F.2d at 676-77; In re Stephenson Supply, 768 F.2d at 582-85. Based on our own review of that history, we are convinced that it evidences a congressional intent for 11 U.S.C. § 506(b) to preempt state laws like O.C.G.A. § 13-1-11 such that all contractually set attorney's fees owed to an oversecured creditor now must be assessed for reasonableness.

Despite all of these factors in support of our position, we do recognize that in In re East Side Investors, we held that compliance with Georgia's contractual attorney's fees provision entitled a secured creditor to treat the fees as part of the principal indebtedness. 694 F.2d at 246.[4] East Side Investors would seem to suggest that 11 U.S.C. § 506(b) is not applicable to the present case. Both parties agree that O.C.G.A. § 13-1-11 was complied with here. Based on this compliance, Advocate has argued that East Side Investors indicates that by the time Welzel

---

[4]In that case, we discussed Ga. Code Ann. § 24-506 (1977), the statutory predecessor to O.C.G.A. § 13-1-11. The two provisions contain identical language.

14

filed his petition, Advocate's contractually set attorney's fees already had dissolved into the principal indebtedness related to the Savannah properties. In essence, Advocate contends that 11 U.S.C. § 506(b) had no bearing because under East Side Investors, there were no longer any "fees" separate from the principal that could be assessed for reasonableness as of the filing date. East Side Investors, however, applied the law as it stood prior to passage of the Bankruptcy Reform Act of 1978, of which § 506(b) was a part. Given that 1978 Act changed the legal landscape, East Side Investors no longer constitutes binding precedent. Furthermore, as we have explained, the plain language of § 506(b) blanketly applies the reasonableness standard to contractually set attorney's fees, irrespective of how state law might treat such fees. Section 506(b), then, displaces East Side Investors.

For the foregoing reasons, we conclude, as did the district court and the panel, that Congress intended for contractually set attorney's fees in the oversecured creditor context to be governed by § 506(b), even if otherwise vested and enforceable under state laws like O.C.G.A. § 13-1-11. We therefore rule that the contractually set attorney's fees owed to Advocate must be assessed for reasonableness under § 506(b).

B. Effect of § 506 on the Allowability of Advocate's Claim

15

Having determined that the 11 U.S.C. § 506(b) reasonableness standard

applies to the attorney's fees owed to Advocate, we now address whether the

bankruptcy court should bifurcate a claim for fees between secured and unsecured

claims under § 506(b) and § 502 based on the reasonableness of the fees, or

whether the court should limit the collection of fees to those that are reasonable,

with the portion deemed unreasonable disallowed.  The district court rejected the

bifurcation approach and ruled that unreasonable fees should be disallowed, and

the panel affirmed.  The language and structure of § 502 and § 506(b), however,

lead us to conclude that bifurcation is the proper approach.  In addition, we

conclude that, despite Welzel's assertions to the contrary, equitable considerations

do not supply a rationale for rejecting the bifurcation result.

1.  The Language and Structure of § 502 and § 506(b)

We begin with the basic language and structure of the Bankruptcy Code

regarding the allowance or disallowance of claims.  11 U.S.C. § 101(5)(a) defines

"claim" as a "right to payment."  In turn, 11 U.S.C. § 502(a), titled "Allowance of

claims or interests," indicates that, as long as a proper proof of claim is filed under

11 U.S.C. § 501, a right to payment constitutes an allowed claim under the

Bankruptcy Code "unless a party in interest . . . objects."  If there is such an

objection, § 502 states that the bankruptcy court should allow the claim unless one

16

of the exceptions enumerated in subsection (b) precludes allowance.[5]  In this

manner, § 502 lays down general instructions for the bankruptcy court in

considering whether a claim should be allowed or disallowed.

Section 506(b) should be read against the backdrop of general instructions

enunciated in § 502.  In interpreting one part of a statute, "we must not be guided

by a single sentence or member of a sentence, but look to the provisions of the

whole law, and to its object and policy."  Philbrook v. Glodgett, 421 U.S. 707, 713,

95 S. Ct. 1893, 1898 (1975) (citation omitted).  Similar provisions in a statute,

moreover, should be read consistently.  See Maynard v. Williams, 72 F.3d 848,

853-55 (11th Cir. 1996) (reading two provisions of the Family Support Act of 1988

in pari materia); Sorrell v. Commissioner of Internal Revenue, 882 F.2d 484, 487-

88 (11th Cir. 1989) (reading two provisions of the Internal Revenue Code in pari

materia).  Given these interpretive principles, we must determine how to interpret

the general instructions concerning allowance and disallowance contained in 11

---

[5]The bankruptcy court noted that only two exceptions delineated in § 502(b) possibly were relevant here.  Section 502(b)(1) states that a claim is disallowed if "such claim is unenforceable against the debtor and property of the debtor, under . . . applicable law."  Section 502(b)(2) precludes allowance if the "claim is for unmatured interest."  As to the former exception, it is undisputed that Advocate's claim to fees is enforceable under applicable state law, O.C.G.A. § 13-1-11.  Nor is there any applicable federal law precluding enforceability.  As we explained, 11 U.S.C. § 506(b) addresses the reasonableness of fees, not their enforceability.  Moreover, unreasonable fees remain enforceable under § 506(b), just not as a secured claim, as we show infra.  Thus, § 506(b) cannot be read as "applicable law" that precludes allowance of Advocate's claim.  As to the latter exception, Advocate's claim does not represent in any way unmatured interest.

17

U.S.C. § 502 and the more specific instructions concerning attorney's fees in § 506(b) such that the two provisions are rendered consistent. We first note that § 506(b) does not state that attorney's fees deemed unreasonable are to be disallowed. In fact, the subsection is completely silent with regard to the allowance/disallowance issue. This silence suggests that § 506(b) is meant not to displace the general instructions laid down in § 502, but to be read together with § 502 in a complementary manner.

That the two provisions are complementary is further evidenced by the structure of § 506(b). The title of § 506, "Determination of secured status," indicates that the section is more narrow in focus than § 502. That is, the title shows that § 506 deals with whether a claim is secured or not, as opposed to the larger question of whether the claim is allowed or disallowed, as addressed by § 502. Subsections (a) and (b) then deal more narrowly with particular types of secured claims, undersecured and oversecured, respectively. Section 506(b) begins by stating that it applies in the context of an allowed secured claim that is secured by property that is greater in value than the claim amount. It goes on to provide that a holder of such an allowed claim is permitted reasonable attorney's fees as part of such claim if the fees were provided for in the loan contract. In other words, subsection (b) states that contractually set attorney's fees, if reasonable, are

18

incorporated into the underlying allowed secured claim. By negative implication, if fees deemed unreasonable do not become part of the secured claim, they are unsecured. This illustrates that § 506 is meant to address "a number of important rules specifying the determination of the secured status of a claim, [not] the allowance or disallowance of the underlying claim itself." 4 Collier on Bankruptcy ¶ 506.01, at 506-6 (Lawrence P. King ed., 15th ed. 2001).

Language and structure thus demonstrate that §§ 502 and 506 should be read in tandem with one another, for they address complementary but different questions. Section 502 deals with the threshold question of whether a claim should be allowed or disallowed. Once the bankruptcy court determines that a claim is allowable, § 506 deals with the entirely different, more narrow question of whether certain types of claims should be considered secured or unsecured. Claims considered secured under § 506 get preferential treatment. Sections 361 and 363(e) protect recovery of such claims from the collateral under numerous circumstances. Secured claims also do not have to line up with other claims in the order of priority enunciated in § 507. The bankruptcy court, moreover, can reject a plan under Chapter 11 or 13 if secured claims are treated improperly. §§ 1129(b)(2)(A) and 1325(a)(5). In contrast, claims that are treated as unsecured under § 506 cannot be collected from the collateral and receive ordinary treatment

19

under the Bankruptcy Code.

Applying our interpretation to the present case, the threshold question is whether Advocate's claim for its contractually set attorney's fees is allowed under § 502. The entire claim to fees is allowable under § 502 as long as the exceptions in subsection (b) do not apply. As already noted, none of these exceptions apply here, so Advocate's claim for its contractual attorney's fees passes muster under § 502. Given that the fees claim is allowed, the fees must then be assessed for reasonableness under § 506(b). Reasonable fees are then to be treated as a secured claim. If a portion of the fees are deemed unreasonable, however, the fees should be bifurcated between the reasonable portion, treated as a secured claim, and the unreasonable portion, treated as an unsecured claim.[6] By failing to adopt this bifurcation approach and instead disallowing unreasonable fees, the district court erred.

2. Equitable Considerations and the Bifurcation Approach

Given that statutory language and structure support the use of a bifurcation approach under 11 U.S.C. § 506(b), we are loathe to reach a contrary result based

---

[6]The bifurcation of a claim into secured and unsecured portions is not a foreign concept to the Code. Indeed, § 506(a) specifically references bifurcation in the context of undersecured creditors. Nor is our interpretation of § 506(b) foreign to that of other circuits. Our decision to treat fees found unreasonable under § 506(b) as an unsecured claim accords with the Ninth Circuit's reading of § 506(b). See In re 268 Ltd., 789 F.2d at 678.

on equitable considerations. Welzel argues that if § 506(b) is construed as creating a bifurcated framework and unreasonable fees are not disallowed, it provides creditors with a windfall by allowing them to collect attorney's fees far in excess of the value of services actually provided. We reject Welzel's equitable argument.

The statutory language of the Bankruptcy Code should not be trumped by generalized equitable pronouncements, especially when Congress has been explicit when it intends for courts to exercise equitable discretion in the bankruptcy arena. See § 365(d)(10) (instructing court to look at "equities of the case"); § 502(j) (instructing court to act "according to the equities of the case"); § 524(g)(4)(B)(ii) (instructing court to make determination that naming certain persons in injunction is "fair and equitable"); see also Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S. Ct. 963, 969 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Were we to conclude otherwise, we would risk unraveling the careful balance between creditors' and debtors' rights, and the rights of creditors in relation to one another, that Congress has struck in provisions like § 502 and § 506. See United States v. Noland, 517 U.S. 535, 536, 116 S. Ct. 1524, 1525 (1996) (holding that bankruptcy court "may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities").

21

Furthermore, even if equitable considerations were to control the outcome here, equity favors Advocate, not Welzel. As Welzel acknowledges, a secured creditor like Advocate would be able to enforce the entire amount of contractually set attorney's fees under state law. At the same time, because Advocate is oversecured and Welzel is solvent, any portion of Advocate's claim that is disallowed accrues to the benefit of Welzel, not his other creditors. Under these circumstances, debtors like Welzel would be the ones receiving a windfall if we were to read 11 U.S.C. § 506(b) as trumping state law to authorize disallowance of unreasonable fees.[7]

In addition, if we were to read § 506(b) to authorize disallowance of unreasonable fees, debtors would have a strong incentive to avoid otherwise valid contractual obligations under state law by filing voluntary bankruptcy petitions. We would open the floodgates to debtors using this same tactic under § 506(b) to persuade courts — acting on "equitable" considerations — to disallow a wide

---

[7]It is true that the promissory notes in this case provided that collection of the contractual attorney's fees was "subject to any limits under applicable law." R1-1 Exh. 1. One can argue based on this provision that the harm to Advocate would be minimal if a portion of its contractual fees was disallowed. The argument would be that this provision shows that Advocate's contractual expectations would not be dashed if part of its fees was disallowed because Advocate obviously contemplated that it might be unable to recover a portion of its fees. We disagree with such an argument. We do not see how the insertion of this boilerplate language into the parties' loan documents at all mitigates against Advocate's loss, especially when, as we have explained, there is no "applicable law," state or federal, that authorizes disallowance here.

22

range of contractually set obligations, such as prepayment penalties and the like, whenever the terms might seem unreasonable. Such a result would only increase litigation and do a disservice to the parties' contractual expectations at the time the loan was effectuated. The transaction before us arose between sophisticated and counseled business entities.

Finally, if we read § 506(b) as a disallowance provision, we would turn a basic principle of bankruptcy law on its head. *Unsecured* creditors would be privileged over oversecured creditors like Advocate in the area of contractually set attorney's fees. Not subject to § 506(b), unsecured creditors who desired to collect unreasonable contractual fees would have an allowed claim under § 502, while as oversecured creditors would have such fees disallowed entirely under § 506(b). This outcome would create an absurd result — unsecured creditors would be in a more protected position than a group of secured creditors. We should avoid construing § 506(b) in such a manner. See United States v. 6640 S.W. 48th St., 41 F.3d 1448, 1452 (11th Cir. 1995) (noting that a statute should be construed in a manner that avoids an absurd result). Reading 11 U.S.C. § 506(b) as a disallowance provision also would put an oversecured creditor in a worse position for having given the debtor a better bargain than he could have obtained had the creditor been undersecured or unsecured. No creditor should be put in a worse

23

position for having made a better bargain, and we reject such an outcome here.

For these reasons, even if equity were considered in the present case, equity would enhance Advocate's position. As such, the equitable considerations here do not cause us to reject our original conclusion, predicated on statutory language and structure, that unreasonable fees under § 506(b) constitute allowable, but unsecured, claims. Such considerations only reinforce our original analysis.

### III. CONCLUSION

This appeal challenged the district court's ruling that contractually set attorney's fees owed to an oversecured creditor, even if vested and enforceable under state law, must be assessed for reasonableness under 11 U.S.C. § 506(b). It also questioned whether the court's conclusion that unreasonable fees, as opposed to being treated as an unsecured claim, should be disallowed. A panel of our court affirmed the district court judgment. In summary, we decide that the district court properly held that the § 506(b) reasonableness standard applies even when the contractual attorney's fees are otherwise vested and enforceable under state law. We rule that the district court erred, however, in holding that unreasonable fees should be disallowed. We instead adopt a bifurcation framework for § 506(b). Once the bankruptcy court determines that the fees are allowed under § 502, it should then analyze their reasonableness under § 506(b). Fees deemed reasonable

constitute a secured claim, with the balance of unreasonable fees treated as an unsecured claim.  Because the district court mistakenly rejected this bifurcation approach, we AFFIRM in part, REVERSE in part and REMAND for further proceedings consistent with this opinion.