**In re David FRIEDEL, Debtor.**

**No. 03–30334–WRS.**

United States Bankruptcy Court, M.D. Alabama.

June 15, 2004.

Michael F. Braun, Montgomery, AL, for
James L. Lane, Michael F. Braun, Credi-
tors.

William C. Elliott, Montgomery, AL, for Ralph A. & Elizabeth Trice, Creditor.

Britt–GH Griggs, Parnell and Crum, P.A., Montgomery, AL, for American General Finance, Creditor.

Daniel Gary Hamm, Montgomery, AL, for Daniel Gary Hamm, Trustee.

Vonda S. McLeod, Shinbaum, Abell, McLeod & Vann, Montgomery, AL, for David Friedel, Debtor.

Richard D. Shinbaum, Shinbaum, Abell, McLeod & Vann, Montgomery, AL, for David Friedel, Debtor.

## MEMORANDUM DECISION

WILLIAM R. SAWYER, Bankruptcy Judge.

This Chapter 7 bankruptcy case is before the Court upon the Trustee's objection to the claim of Ralph A. Trice and Elizabeth Trice, to the extent that they seek attorney's fees. (Doc. 72). By its order of December 17, 2003, the Court ordered the sale of a parcel of real property and ordered that any party claiming an interest in the proceeds of the sale to file a claim. (Doc. 43). On January 28, 2004, the Court entered an order further regulating this procedure. (Doc. 58). On April 1, 2004, the Court ordered the distribution of some of the sale proceeds, reserving its ruling upon the claims for attorney's fees and certain of the claims for interest. (Doc. 80). The Court will now dispose of the claims for attorneys' fees and those claims for interest not heretofore resolved.

## I. Facts

This Chapter 7 case was filed on February 4, 2003. At that time, the Debtor owned an undivided one-half interest in a piece of commercial real estate in Montgomery, Alabama. (Doc. 1, Sch.A). The Debtor's schedules indicated that Ralph Trice ("Trice") held a first mortgage on the property and that James Lane ("Lane") held a second mortgage. (Doc. 1, Sch.D). On November 13, 2003, the Chapter 7 Trustee filed a motion to sell the estate's one-half interest, free and clear of all liens and interests except the two mortgages, pursuant to 11 U.S.C. Section 363(f). (Doc. 24). The Trustee then withdrew that motion after speaking with counsel for the first mortgage holder about attorney's fees.[1] (Doc. 29). The Trustee then filed a motion to sell the property free and clear of all liens and interests. (Doc. 30).

The Court first heard the motion to sell free and clear on December 16, 2003. The Court granted the Trustee's motion and ordered that all sale proceeds be paid into the Registry of Court until the Court ordered disposition of the proceeds. (Doc. 43). The Court further ordered that any claims to the funds should be made in writing and filed with the Court by January 5, 2004. The Trices and Lane both filed claims to the funds.[2]

At this point, the Court notes that the pleadings and procedural devices selected by the Trustee are problematic and have made the docket in this case somewhat unclear. Specifically, it should be noted

---

1. The Trustee asserts that he withdrew the motion because he did not want counsel for the lien holder to assert a claim for attorney's fees between $30,000.00 and $40,000.00 against the sale proceeds. *See* Doc. 29. The motion filed at Doc. 30 seeks to have the property sold free and clear of all liens and interest, including the two mortgages.

2. The Trices originally filed two claims: Claim No. 2 is filed as secured in the amount of $125,490.25 and Claim No. 4 is filed as unsecured in the amount of $17,711.86. Lane originally filed a claim as secured in the amount of $25,411.77. (Claim No. 3). The parties' amended claims are discussed *infra*.

that the Trustee's proposal does not propose to sell the interest of Timothy Moncrief, ("Moncrief") the co-owner of the property in question. Though the Trustee has the power to cause a sale of a co-owner's interest pursuant to 11 U.S.C. Section 363(h), that must be accomplished by way of an adversary proceeding and not by motion. FED. R. BANKR. P. 7001(3). Nevertheless, the Court allowed the Trustee to proceed by motion because the co-owner consented to the sale and was agreeable to proceeding under Section 362(f) instead of Section 362(h).[3] For this reason, the Court's order granting the motion to sell free and clear applied to the entire interest in the subject real property, both the interest of the estate and the interest of the co-owner Moncrief. In proceeding in this manner, the Court took jurisdiction over the disposition of all of the sale proceeds. *See* 28 U.S.C. § 1334(e).

On January 27, 2004, the Court held a status conference regarding the sale of the real estate and the distribution of the proceeds from that sale. At that time, the Court learned that the sale had closed on January 14, 2004 at the price of $222,700.00, which all parties agree is a fair price.[4] On January 26, 2004, $182,077.07 was paid into the registry of this Court. The parties explained to the

Court that the sum paid into the Court's registry represented the sales price less several sums including: the real estate commission ($22,270.00); other ordinary expenses from the sale of the property (county taxes$377.05; title search-$175.00; title examination$225.00, deed preparation-$85.00; title opinion-$200.00; and recording fees$23.50); the survey fee ($607.50); property taxes ($3,236.23); payment of two judgment liens on behalf of Moncrief ($8,971.15 to South Alabama Distributors and $1,025.22 to Capital One); and $3,467.28 paid to Moncrief, representing the remaining share of his equity in the property.[5] Specifically, the $182,077.07 represented the purported payoff amounts for the first and second mortgages ($143,202.42 and $25,411.00 respectively) and the Debtor's share of equity in the property ($13,463.65).

At the hearing, the Court heard argument from the Trustee and from counsel for the Trices regarding the proper disposition of the remaining sale proceeds. The Trustee stated an oral objection to the amount of attorney's fees claimed in connection with the first mortgage on the property. Specifically, the Trices claimed attorneys' fees in the amount of $2,500 plus one-third of the mortgage balance, for a total of over $40,000.00. The principal

---

**3.** At the hearing on December 16, 2003, the Trustee advised that Moncrief was agreeable to the sale and at the hearing on March 30, 2004, Moncrief appeared by counsel Lewis B. Hickman, Jr. and specifically consented to the jurisdiction of this Court and to proceeding in this manner.

**4.** A copy of the Settlement Statement was provided to the Court at the hearing.

**5.** At this point, the Court would again note its frustrations with the procedures employed by the Trustee in this instance. The Trustee sought to sell the property by way of a motion to sell free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363(f). *See*

Doc. 30. The Court granted the Trustee's motion and allowed the sale to proceed in that manner. Doc. 43. However, the sale that actually took place is not the sale that the Trustee requested or that the Court approved. Rather, at the closing, several liens and encumbrances were paid off instead of the entire amount being paid into the Court's registry and later sorted out. *See* Order at Doc. 43 ("[T]he proceeds recovered by the sale shall be paid over to the Clerk of Court of the United States Bankruptcy Court until final disposition is made. Any claims to funds must be made in writing and filed with the court no later than January 5, 2003.").

balance of the mortgage held by the Trices was only $93,453.90.[6] In light of the relatively small mortgage balance, and the nature of the work entailed, the Court considers the request for attorneys' fees to be grossly excessive. The Court ordered the Trices to file an amended claim setting forth additional detail about the requested attorneys' fees together with affidavits setting forth the tasks performed, the date and time the tasks were performed and the requested hourly rate. (Doc. 58).[7]

Counsel for the Trices filed an amended proof of claim form on March 12, 2004. (Claim No. 7).[8] The Trices filed a secured claim in the total amount of $131,129.33.[9] The Trices subsequently amended that proof of claim to assert a total secured claim of $146,589.24 (Claim No. 8). Lane filed an amended proof of claim form asserting a secured claim in the total amount of $26,576.68. (Claim No. 5).

The Court held a second hearing on the distribution of the sale proceeds on March 30, 2004 at the United States Bankruptcy Court, Montgomery, Alabama. Daniel G. Hamm, Trustee; Richard D. Shinbaum, attorney for the Debtor; Lewis B. Hickman, Jr., attorney for Moncrief; Michael F. Braun, attorney for Lane; and William C. Elliott and Brett S. Chipser, attorneys for the Trices were present for the hearing. At the hearing, counsel for Moncrief, the co-owner of the property, specifically consented to the jurisdiction of this Court.

The parties represented to the Court that certain amounts of the sale proceeds were not in dispute. Specifically, the parties agreed that the Trices held the first mortgage on the property, that the principal balance of that mortgage was $93,453.90, that the Trices were owed $1,729.42 in late fees and $50.00 for insufficient funds charges. The parties also agreed that Lane held the second mortgage on the property, that the principal balance of that mortgage was $19,497.69, that Lane was owed $3,937.79 in interest and $391.40 in late fees. In light of the agreement and the record before it, the Court ordered these sums paid from the registry of Court. (Doc. 80). At the conclusion of the hearing, the Court took the fee requests and the amount of interest owing on the first mortgage under advisement for its consideration and review.[10]

After the disbursements discussed above, the Court is holding $63,016.87. The question presently before the Court is what should be done with that money. The Trices are asserting a claim for interest in the amount of $8,893.80. *See* Claim

---

6. At the March 30, 2004 hearing, the parties agreed that this figure was correct.

7. The Court's order also incorrectly recited that James Lane had not filed a proof of claim. Doc. 58. As noted *supra*, Lane had timely filed a claim to the proceeds. However, the Court ordered additional detail to be supplied for this claim as well. Doc. 67. Lane filed an amended proof of claim on February 13, 2004. (Claim No. 5).

8. Claim No. 7, amends Claim No. 6 also filed on March 12, 2004. It appears that Claim No. 7 corrects the unnotarized affidavit filed with Claim No. 6. The affidavit of Brett Chipser, another attorney for the Trices, may be found at Doc. 71.

9. *See* Trustee's Objection to Creditor Trices Proof of Claim at Doc. 72; Response to Objection at Doc. 74.

10. The amount of interest is in dispute because the calculation originally included charges based upon a portion of the disputed attorneys' fees. *See* Claim No. 7 (claiming interest charges of $9,424.50). The Trices amended proof of claim (Claim No. 8) provides for interest calculated solely on the principal mortgage balance, late fees and insufficient funds charges, in the amount of $8,893.80.

No. 8. The Trices further assert a claim for attorney's fees in the amount of $42,362.12. *See* Claim No. 8. This figure includes a charge for a "contingency fee" equal to one-third of the mortgage balance, or $36,371.76. Lane asserts a claim for attorney's fees in the amount of $2,750.00. *See* Claim No. 5.

## II. Analysis

### A. Jurisdiction

■ The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(e). The proceeds from the sale of the property are property of the bankruptcy estate. As discussed *supra*, the procedural devices pursued by the Trustee are problematic. However, it is without question that this Court has the power to order the sale of a co-owner's interest in property. 11 U.S.C. § 363(h). In this case, the co-owner has expressly consented to this Court's jurisdiction over the sale of property. 11 U.S.C. § 363(f)(2); *see e.g., Veltman v. Whetzal*, 93 F.3d 517, 522 (8th Cir.1996) (when non-debtor co-owner consents to sale, neither protections of Section 363(h) nor hearing is necessary).

Counsel for the Trices repeatedly has argued that this Court only has jurisdiction over a portion of the sale proceeds. *See* Documentation attached to Claims No. 2, 4, 6, and 7; Response to Trustee's Objection at Doc. 74; Motion to Strike Affidavits at Doc. 75. The undersigned rejects that contention. Counsel appears to be under the misapprehension that this Court only has authority to deal with the one-half interest owned by the Debtor in the present bankruptcy case. In the Court's view, counsel is attempting to define the Court's interest too narrowly. As discussed *supra*, a bankruptcy court has the power to order a sale of a co-owner's interest in property. In this case, the Court also had the co-owner's express consent to the sale. The whole of the property was sold and this Court took jurisdiction over the entire sale and subsequently, over the entire amount of the sale proceeds.

### B. Attorney's Fees

The Court's review of the fee requests in this case is governed by Section 506(b) of the Bankruptcy Code, which allows oversecured creditors to include reasonable attorney's fees as part of their allowed secured claim. 11 U.S.C. § 506(b). Section 506(b) states in relevant part as follows:

(b) To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable* fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (emphasis added). It is undisputed that the Trices and Lane are oversecured creditors. Both mortgages provide that reasonable attorney's fees incurred in connection with a foreclosure action will constitute part of the secured debt.[11]

The Eleventh Circuit previously has examined Section 506(b) and concluded that

---

11. *See* Trice Mortgage, attached to Claim No. 7 ("And it is also agreed that in the case the Mortgagees, herein, their heirs or personal representatives, see fit to foreclose this mortgage in a court having jurisdiction thereof, Mortgagees will pay a reasonable attorney's fee therefor, which fee shall be and constitute a part of the debt hereby secured."); Lane Mortgage, attached to Claim No. 5 ("And it is also agreed that in case the Mortgagee, herein, his successors, heirs, assigns, or personal representatives, see fit to foreclose this mortgage in a court having jurisdiction thereof, Mortgagor(s) will pay a reasonable attorney's fee therefor, which fee shall be an constitute a part of the debt hereby secured.").

an oversecured creditor's contractually set fees are subject to the federal standard of reasonableness as set forth in the Code. *Welzel v. Advocate Realty Investments, LLC (In re Welzel)*, 275 F.3d 1308, 1314–15 (11th Cir.2001). In *In re Welzel*, the promissory note provided that in the event of default, the lender could recover "costs of collection, including... fifteen percent (15%) of the principal plus accrued interest as attorneys' fees." *Id.* at 1311. In that case, the creditor filed a secured claim for $1,125,464.47, which included $146,799.71 for attorneys' fees. *Id.* In considering the fees, the Court addressed the threshold question of whether the fees constituted an allowed claim under Section 502. *Id.* at 1317–19; *see* 11 U.S.C. § 502. The Court found that the claim was allowed because the fees were enforceable under Georgia state law and none of the exceptions found in Section 502(b) applied. *In re Welzel*, 275 F.3d at 1318. After determining that the claim was allowed, the Court assessed the fees for reasonableness under Section 506(b). *Id.* Reasonable fees are treated as a secured claim; however, if a portion of the fees are deemed unreasonable, the Court bifurcates the claim for fees, allowing the reasonable portion as secured and relegating the amount deemed unreasonable to unsecured status. *Id.* at 1318–20.

### 1. Fees Claimed on Trice Mortgage

■ The Court finds that the facts of the claim for fees *In re Welzel* are distinguishable from the facts of the claim for fees on the Trice mortgage. Specifically, the Court finds that the reasonableness inquiry and bifurcation approach employed by the Welzel Court are only appropriate if the fees are otherwise allowed and enforceable. In the instant situation, the Court finds that the claim for fees on the Trice mortgage is not allowed because the claim is not enforceable against the debtor under state law. 11 U.S.C. § 502(b)(1).

The Trices are claiming attorneys fees of $42,362.12 for the initiation of foreclosure proceedings and subsequent work in the Bankruptcy Court to recover on a mortgage with a principal balance of only $93,453.90. The fees claimed total more than 45% of the mortgage balance. In the view of the undersigned, this is patently excessive.

■ In determining whether a given fee is excessive, Alabama courts consider the following twelve criteria:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Van Schaack v. AmSouth Bank, N.A.*, 530 So.2d 740, 749 (Ala.1988); *Peebles v. Miley*, 439 So.2d 137, 140–41 (Ala.1983); *see* ALA. R. PROF'L CONDUCT 1.5(a) ("A lawyer shall not ... charge, or collect a clearly excessive fee"). "[T]hese criteria are evaluative and not an exhaustive list of specific criteria that all must be met when reviewing the reasonableness of an attorney fee." *Beal Bank, SSB v. Schilleci*, 2004 WL 870446, at *8 (Ala.2004).

The Court has considered the instant fee application against those twelve factors in reaching its determination that the fees requested are excessive. The criteria which are particularly relevant to the

Court in this case are: the nature and value of the subject matter of the employment; the time consumed; the reasonable expenses incurred; whether a fee is fixed or contingent; and the fee customarily charged in the locality for similar legal services.

This case involves a relatively simple proceeding to foreclose an interest in commercial real property. One of the co-owners of the property (the Debtor) is in bankruptcy.[12] Because the automatic stay is in effect, the procedure is complicated slightly by this fact, but it hardly creates a novel legal situation. Creditors regularly come into this court seeking to foreclose upon an interest in property. In this case, the foreclosure never occurred because the Trustee moved to sell the property instead. As stated *supra*, the sale closed on January 14, 2004. In sum, the nature of the subject matter of counsels' employment is nothing unusual. Nor is the value of the subject matter particularly noteworthy. As discussed earlier, the mortgage balance is relatively small.

As nearly as the Court can reconstruct, it appears that counsel spent a combined total of about 21.3 hours on this matter.[13] Though the Court's order of January 28, 2004 required counsel to set forth "with reasonable specificity: a description of the tasks performed, the date each task was performed, the time required to perform the task and the attorney's proposed hourly billing rate" (Doc. 58), counsel have failed to supply the Court much with which to work. Chipser has submitted a time entry record detailing charges for 17.3 hours. *See* Doc. 71. The entries are vague and do not allow the Court to provide meaningful review of the application. In response to the Court's order, Elliott submitted copies of two bills-one dated December 16, 2003 for 4.0 hours of work in the amount of $600.00 and one dated December 3, 2003 in the amount of $1,300.00 with no indication as to the amount of time charged. *See* Documentation attached to Claim No. 7.[14] No time entry records have been submitted for the fees claimed by Chambless, Math or Azar & Azar.[15]

With the information it has before it, the Court is not able to assess whether the time spent on this matter is reasonable. Assuming *arguendo* that the time charged is reasonable, it is not an excessive amount of time to be consumed on a single legal matter. This factor would support the Court's conclusion that the fee requested is excessive. In reaching this conclusion, the Court notes that if counsel were compensated for the entire amount of time charged, at Chipser's hourly rate of $200.00/hour, they would be entitled to a fee of $4,260.00–approximately one-tenth of the fee they are actually requesting.

12. The other co-owner (Moncrief) was also in bankruptcy during part of this time period. His Chapter 13 case was dismissed on the Trustee's motion on October 6, 2004. (Case No. 02–34059, Doc. 72).

13. Chipser billed for 17.3 hours (Doc. 71); and Elliott billed for 4 hours (Claim No. 7). There is no indication of how many hours the other attorneys (Chambless, Math; Azar & Azar) spent on work related to this matter. *See* Documentation attached to Claim No. 7.

14. The figures shown on the two invoices do not square exactly with Elliott's charges set forth on the "Breakdown of Claim for Trice" attached to Claim No. 7. In the breakdown, Elliott lists charges for $800.00 and $1,300.00. *See* Documentation attached to Claim No. 7.

15. Included in the proof of claim are charges for Chambless, Math in the amount of $475.00 and Azar & Azar in the amount of $375.00. It appears that these fees were incurred during the pendency of Moncrief's Chapter 13 bankruptcy case. Invoices attached to Claim No. 7 indicate that both of those firms have been paid.

The expenses incurred are not broken down in the proof of claim filed by the Trices. It appears that the expenses incurred total approximately $590.36.[16] In the Court's view, the small amount of expenses incurred supports a finding that the total fee requested is excessive.

Turning its examination to the factor involving fixed or contingent fees, the Court is mindful that typically "an attorney on a contingent fee basis is entitled to charge more than an attorney who is guaranteed compensation by periodic billings." *Peebles v. Miley,* 439 So.2d at 142. The affidavit of Chipser states that the fee arrangement with the Trices was for a flat fee of $1,500.00 plus $200.00/hour if it were necessary to have a court proceeding. In addition, the arrangement provided for a contingency fee of 33⅓ % of the balance due on the mortgage, less a credit of $1,500.00 and the hourly charges. Doc. 71. Chipser submits that such a fee is not unusual in a commercial collection case. Doc. 71.

The Alabama State Bar has addressed this issue in a 1994 Ethics Opinion. *See* 55 Ala. Law. 214, Opinions of the General Counsel. In that opinion, the General Counsel state that "[i]t is improper for a lawyer to charge a set percentage fee in a foreclosure sale without regard to the factors for determining a reasonable fee as contained in Rule 1.5 of the Rules of Professional Conduct." 55 Ala. Law. 214. In the instant situation, there is no indication that counsel has given any consideration to the factors set forth in Rule 1.5 (identical to those set forth in *Peebles,* with the additional factor of whether there is a written fee arrangement). *See* ALA. R. PROF'L CONDUCT 1.5. In the Court's view, counsels' attempt to apply the percentage

fee in an inflexible manner supports its finding that the fee charged is excessive.

Finally, turning to the criterion involving the fee customarily charged in the locality for similar legal services, the Court finds that this factor also warrants the conclusion that the fees requested are excessive. In making this determination, the Court has considered the affidavits submitted by the Trustee (Doc. 72); the arguments of counsel at the March 30, 2004 hearing; and the Court's own experience with the value of such services. *King v. Keith,* 257 Ala. 463, 60 So.2d 47, 52 (1952) (citing *Dent v. Foy,* 214 Ala. 243, 107 So. 210 (1925)). The affidavits submitted by the Trustee indicate that other attorneys in the locality typically charge between $400.00 and $2,500.00, plus expenses, for foreclosure of real property. (Doc. 72). The Trustee, counsel for the debtor and counsel for the co-owner also orally objected to the amount of fees requested at the March 30, 2004 hearing. In the Court's own experience, it is highly irregular to see such a large fee request tied to a relatively small secured claim.

■ Upon consideration of these factors, the Court will disallow the request for attorneys' fees on the Trice mortgage. The Court will disallow the entire amount of fees requested as a sanction for seeking a grossly excessive fee. Because the Court finds that the fee is excessive as a matter of state law, it is not subject to allowance as an unsecured claim under *In re Welzel.*

### 2. Fees Claimed on the Lane Mortgage

■ Lane claims attorney's fees of $2,750.00 for work to recover on a second

---

**16.** The expenses identified by the Court include: $164.00 for title and abstract; $126.36 for publication of the notice of foreclosure sale; $150.00 for filing fee for a motion for relief from stay filed in the instant case; and $150.00 for two motions for relief from stay filed in the Moncrief bankruptcy case.

mortgage with a principal balance of $19,497.69. Counsel has provided the Court with a time entry report of sufficient specificity for the Court to review. *See* Documentation attached to Claim No. 5. The time entry report shows that counsel has charged for 25.5 hours of professional time on this matter.[17] There are no objections to the fees requested. The Court finds that this claim is allowed under Section 502. The Court further finds that the fees requested are reasonable under the circumstances. 11 U.S.C. § 506. Accordingly, the claim will be allowed as secured and the Court will order it paid from the funds being held in the Registry of Court.

### C. Interest on the Trice Mortgage

The last amended proof of claim filed by the Trices, Claim No. 8, provides for interest calculated solely on the principal mortgage balance, late fees and insufficient funds charges, in the amount of $8,893.80. *See* Documentation attached to Claim No. 8. At the hearing on March 30, 2004, the Trustee indicated that the only objection to the interest claimed to be owing on the Trice mortgage was that the calculation was based in part upon the disputed attorney's fees. As the Trices have now amended the interest claim so that the calculation is independent of the fees, the Court will allow the interest as requested. The Court will order this amount paid from the monies being held in the Registry of Court.

### D. Other Matters

In light of the discussion set forth in part II(B)(1) *supra*, the Court will sustain the Trustee's Objection to Creditor Trices' Proof of Claim. (Doc. 72). The Court will deny the Trices' Motion to Strike Affidavits. (Doc. 75). The Court finds that the

---

17. Counsel also stated that his regular hourly rate is $150.00/hour, which would total fees of $3,850.00. However, counsel and Lane

motion is not well taken because it realleges the creditors mistaken position that the Court does not have jurisdiction over the entire amount of the sale proceeds. Further, the Court notes that the affidavits submitted by the Trustee were not the determining factor in its decision that the fees requested in connection with the Trice mortgage were grossly excessive.

### III. Conclusion

The Court will disallow the fees requested in connection with the Trice mortgage as a sanction for the filing of a grossly excessive fee request. The Trustee's objection to the proof of claim is sustained. The Court will order $2,750.00 in attorneys fees to be paid to creditor James Lane and will order $8,893.80 in interest to be paid to the Trices. These sums shall be paid from the monies currently being held in the Registry of Court. Finally, the Court will deny the motion to strike affidavits. The Court will enter separate orders on these matters.

---

agree that $2,750.00 is a fair and reasonable fee for the work performed on this matter. *See* Documentation attached to Claim No. 5.